549 So.2d 1246 (1989)
Nancy Carruth BETTS, Plaintiff-Appellee,
v.
Peter W. BETTS, Defendant-Appellant.
No. 88-306.
Court of Appeal of Louisiana, Third Circuit.
October 4, 1989.
Writ Denied December 1, 1989.
*1247 James C. Downs, Alexandria, for plaintiff-appellee. Broussard, Bolton & Halcomb, Daniel Broussard, Alexandria, for defendant-appellant.
Before GUIDRY, LABORDE and KNOLL, JJ.
KNOLL, Judge.
Peter Betts appeals the judgment of the trial court which denied his rule to reduce his monthly child support obligation from $3000 to $1000. Peter contends that the trial court erred in: (1) failing to reduce his child support obligation because of the substantial change in his financial circumstances; (2) considering an anticipated possible future increase in his income; and, (3) not considering whether the children now are in need of the current amount of monthly child support. We affirm.

FACTS
Peter Betts and Nancy Carruth Betts were married on November 21, 1981. Two children were born of their marriage: Allison and Blake. On August 14, 1986, the trial court granted Peter and Nancy a consent judgment of separation based on their mutual fault. In the judgment of separation, the parties were granted joint custody of the two children, with primary physical custody being awarded to Nancy. Peter consented to pay $3000 monthly child support for the two children, maintain hospitalization insurance on the children, pay medical expenses not covered by the insurance, pay maid and babysitting services up to a maximum of $1700 per month through January 1, 1987, and then up to $1500 per month through August 1, 1988, and thereafter, a future monthly maximum of $1000 was agreed upon, subject to termination under certain provisions of the parties' community property settlement, i.e., the placement of Peter Betts Lincoln Mercury, Inc., the dealership Peter and Nancy owned, into Chapter 11 bankruptcy.
In the community property settlement, executed on the same day as signing of the judgment of separation, Peter received all the corporate stock and assets of Peter Betts Lincoln Mercury, Inc., as well as the majority of the commercial and investment property the parties acquired during their marriage. In exchange, Peter assumed the payment of most of the mortgage obligations incurred in the parties' acquisition of these properties. Further, Peter obligated himself to pay Nancy $3000 monthly for her support, subject to termination upon her remarriage and the release of Nancy's father from certain continuing guaranties granted by him for Peter's benefit, or the placement of the dealership into Chapter 11 bankruptcy.
On March 6, 1987, the trial court granted a judgment of divorce to the parties, maintaining, by consent of the parties, joint custody and Peter's $3000 child support obligation.
On June 18, 1987, Peter Betts Lincoln Mercury, Inc. filed bankruptcy proceedings. In connection therewith, Peter terminated his payments to Nancy for maid service and babysitting, as well as her $3000 personal support payment. Just prior to the filing for bankruptcy, Peter also executed a dation en paiement to First Bank, transferring his ownership of Peter Betts Lincoln Mercury, Inc. First Bank then transferred the dealership to John Decker who, in turn, hired Peter as the general manager of the dealership.
On July 10, 1987, Peter filed a rule to lower the monthly child support payments to $1000, citing his decrease in salary as the result of his loss of the dealership and his re-employment only as the dealership's *1248 general manager. Nancy filed a rule to increase child support to $6000, and later filed another rule to make past due child support executory and for contempt. These rules were consolidated and were heard by the trial court on September 14 and October 5, 1987. At the time of the hearings, Allison was 4 years of age and Blake was 3.
Prior to the hearing on Peter and Nancy's child support rules, Peter entered into a second marriage on August 8, 1987.
After the hearing on the parties' motions, the trial court issued written reasons, concluding that: (1) Peter's reduction in income alone was insufficient to justify a reduction in monthly child support payments, given his extravagant lifestyle; (2) Peter's monthly 10% commission from the net profits of sales from John Decker's dealership may be considered in deciding whether a reduction in monthly child support was warranted; and, (3) Nancy failed to establish that she was entitled to an increase in child support payments.
Nancy has not appealed the trial court's ruling that she was not entitled to an increase in child support. Thus, we need only address the denial of Peter's reduction.

CHANGE IN CIRCUMSTANCES
Peter contends that the trial court erred in failing to reduce his monthly child support payments from $3000 to $1000. He argues that the two minor children are not in need of the current amount of child support, and that his lower monthly income justifies a reduction in child support.
A party seeking a modification of a child support award provided in a consent judgment, unless a stipulation contained in the consent agreement provides otherwise, must bear the burden of proving that a modification is in order because of a significant change in the party's circumstances since the entry of the consent judgment. Moncus v. Moncus, 510 So.2d 1271 (La. App. 3rd Cir.1987), writ denied, 514 So.2d 462 (La.1987); See also Aldredge v. Aldredge, 477 So.2d 73 (La.1985).
Peter first contends that the trial court failed to consider whether the children were in need of $3000 monthly for their support.
We note from the outset that the $3000 monthly child support amount was consented to by the parties in both the judgment of separation and the judgment of divorce. This consent amounted to a judicial admission by Peter that Nancy was entitled to receive child support in this amount. Cf. Vesper v. Vesper, 469 So.2d 458 (La.App. 3rd Cir.1985). Thus, it was incumbent upon Peter to carry his burden of proving that the children's needs had substantially changed between the judgment of divorce, signed March 6, 1987, and the hearing on his rule to decrease child support held on September 14 and October 5, 1987, just six months later.
In his motion for a reduction of child support, Peter did not urge that his monthly child support obligation was disproportionately high in relation to his children's needs. Rather, Peter focused his attack on his inability to pay the $3000, and chose to highlight through Nancy's testimony that the children's expenses at the time of the hearing were high. As a result, Peter did not introduce evidence into the record which would compare the present needs of the children to the time when Peter consented to the $3000 child support award.
After carefully examining the record, we find that Peter failed to carry his burden of proving that the children's needs were substantially decreased since he obtained the divorce from Nancy. Therefore, considering that Peter's motion for a decrease in child support came only four months after the consent judgment, we conclude that the trial court did not err in finding that the children's needs had not changed.
Peter next contends that the trial court was manifestly erroneous in determining that his income had not been substantially reduced, sufficient to justify a decrease in his child support obligation. We disagree.
In Dupuy v. Dupuy, 421 So.2d 458, 460 (La.App. 3rd Cir.1982), we stated:

*1249 "A trial court has considerable discretion in determining whether to modify child support awards and such determination will not be reversed except for an abuse of that discretion. Baer v. Simon, 334 So.2d 796 (La.App. 3 Cir.1976).
"Under LSA-C.C. Art. 232 the discharge from or reduction of the alimony owed for the support of children may be sued for and granted `when the person who gives or receives alimony is replaced in such a situated that the one can no longer give, or that the other is no longer in need of it, in whole or in part ...' Therefore one seeking a modification of an award for child support must show a change in the circumstances of the recipients or of the person obligated to pay. Walker v. Walker, 395 So.2d 433 (La. App. 3 Cir.1981). However, it is not every change in circumstances of the person obligated to pay which warrants a modification. As the court stated in Moore v. Moore, 380 So.2d 180 (La.App. 2 Cir.1980):
"The support obligation imposed on the father and the mother of minor children by CC Art. 227 is firmly entrenched in our law and is a matter of public policy. Neither equity (CC Art. 21) [now LSA-C.C. Art. 4] nor practical inability to pay (CC Art. 232) overrides this policy or allows a parent to avoid paying his or her share of the obligation where the inability arises solely from that parent's own neglect and failure ...
`In the absence of a fortuitous change in circumstances authorizing a reduction in child support, a parent even in financial straights [sic], is obligated to support the legitimate needs of his or her children during their minority. Halcomb [v. Halcomb, 343 So.2d 1183 (La.App. 3d Cir. 1977) ], supra.'"
In the case sub judice, the record shows that at the time Peter first agreed to monthly child support payments of $3000, his monthly income as the owner of the dealership was approximately $12,000. At the time of the hearing on the motion for reduction of child support, Peter was the general manager of the John Decker dealership and earned a base pay of $5500 together with a 10% commission on the net income of the dealership.
Initially, Peter contends that the trial court erroneously considered future possible commissions as income in deciding whether a reduction in monthly child support was warranted.
Under LSA-C.C. Art. 146, each "parent shall be responsible for child support based on the needs of the child and the actual resources of each parent." (Emphasis added.)
Peter relies on Dupuy, supra, for the proposition that anticipated future income should not be considered in the determination of a child support award. In Dupuy, the trial court characterized an anticipated settlement from a personal injury suit as future possible income which should be included in setting child support. On appeal we reversed the trial court and held that the settlement should not be considered because the income was speculative and not guaranteed. In distinction, in the present case, although the amount of Peter's commission was not fixed until the end of each month, it was nonetheless guaranteed. The record shows that over a two month period Peter received approximately $3600 as income from the 10% commission in addition to his monthly salary of $5500. After carefully considering the evidence, we find that the trial court properly considered the 10% commission as a factor in deciding whether to reduce Peter's monthly child support obligation.
With regard to Peter's decreased monthly income, the trial court concluded its analysis of the testimony, saying, "While it is evident that Mr. Betts's income has declined it is the opinion of this Court that this fact alone does not justify a reduction in his child support. Mr. Betts's current expenditures are excessive in view of the obligation he owes to maintain his children." We agree.
Implied in the trial court's reasons is the observation that although Peter's income had declined, his expenditures after his separation and divorce belied his assertion that he was entitled to a reduction in his child *1250 support payment. In July, August, and September 1987, Peter made deposits to his personal bank account of $20,052.64, $14,295.33, and $13,532.48, respectively. The record further establishes the following purchases by Peter between the time of his separation and the hearing on his rule to reduce child support: in August and September 1986, he purchased two unimproved town lots in Alexandria for $95,000 each; in November 1986 he and his fiancée traveled to the Cayman Islands; in January 1987 he vacationed in Destin Florida; in February 1987 he purchased a $23,000 Toyota Supra, and purchased a $2200 portable telephone for installation in the Lincoln demonstrator which was at his disposal at the dealership; in April 1987 Peter vacationed in Las Vegas; in May 1987 he purchased a $200,000 home with monthly mortgage payments of $2091, and made improvements on the home in excess of $6000; in May 1987 he also purchased a Jeep station wagon for $21,000; in mid 1987 he purchased new furniture for his home; in June 1987 he traveled with his fiancée to Hawaii at a cost of approximately $5000; and he purchased his wife a $2000 Rolex watch, a pearl bracelet and earrings, and a 2.38 carat diamond ring which cost approximately $7500 but was insured for $18,000.
We cannot reconcile Peter's extravagant lifestyle with his allegations of impecuniosity. Accordingly, we cannot say that the trial court abused its discretion in making a determination that Peter failed to prove by a preponderance of the evidence that his financial condition had significantly deteriorated sufficiently to decrease his monthly child support payments.
For the foregoing reasons, we affirm the judgment of the trial court. Costs of this appeal are assessed to Peter Betts.
AFFIRMED.