510 So.2d 1271 (1987)
Christine Ropollo MONCUS, Plaintiff-Appellant,
v.
James D. MONCUS, Defendant-Appellee.
No. 85-753.
Court of Appeal of Louisiana, Third Circuit.
June 11, 1987.
Rehearing Denied September 2, 1987.
*1272 Jeansonne & Briney, John A. Jeansonne, Jr., Lafayette, Morgan J. Goudeau, III, Opelousas, for plaintiff-appellant.
Diane Sorola, Lafayette, for defendant-appellee.
Before FORET, PLANCHARD* and McNULTY[*], JJ.
ARTHUR J. PLANCHARD, Judge Pro Tem.
This is an appeal by Christine Ropollo Moncus from an order of the trial court *1273 reducing the amount of alimony and child support payments to be made by her former husband, James D. Moncus. The appellee has answered the appeal seeking a further reduction in child support payments, termination of alimony, and a reversal of that part of the judgment awarding arrearages and attorney's fees.
On February 22, 1983, a consent judgment of divorce was entered in favor of appellee against appellant. Under the terms of that judgment, appellant was to receive alimony in the amount of three thousand dollars per month. Appellant also was given custody of the parties' minor daughter, Jennifer E. Moncus, and was awarded child support in the amount of two thousand dollars per month. The judgment contained a provision "reserving the right of either party at any time in the future, without the necessity of showing any change in circumstances, to litigate the amount of alimony and/or child support."
On July 31, 1984 appellee filed a rule for reduction in child support payments, alleging changes in the circumstances of the parties. Appellant filed an answer, denying appellee's entitlement to a reduction and asserting a reconventional demand for past due alimony and child support. Appellee subsequently, filed a rule for termination of alimony.
A hearing was had on the rules, at which the testimony of both parties was taken. On April 30, 1985, a judgment was signed, reducing the amount of alimony to two thousand dollars per month, and the amount of child support to one thousand dollars per month. The judgment was made retroactive to August 1, 1984, and appellee was ordered to pay the arrearages of three thousand five hundred dollars which had accrued prior to that time, plus attorney's fees of three hundred fifty dollars for the collection thereof. The trial court gave its reasons for judgment in a minute entry, which was filed in the record on January 30, 1985.
The parties have assumed that the relevant question is whether there has been a change in the circumstances of the parties since the original judgment, and consequently, have directed their arguments to this issue. However, in a decision rendered subsequent to the judgment of the trial court in this case, our Supreme Court has held that where, as in this case, the original order for alimony or child support was made pursuant to a consent agreement wherein the parties expressly and unequivocally waived the requirement of proving a change in circumstances, the party seeking a modification need not prove a change in circumstances, but is entitled to a res nova hearing on the alimony and child support issues. Aldredge v. Aldredge, 477 So.2d 73 (La.1985).
We must therefore decide this case with reference only to the circumstances of the parties as they existed at the time of the hearing on the request for modification. Because proof of the current circumstances of the parties is a necessary element in proving whether those circumstances have changed sufficiently to warrant a modification under the "change in circumstances" test, we can assume that the parties have fully developed their respective positions on the issue, despite their assumption that the "change in circumstances" test applied.
Aldredge does not address the issue of which party has the burden of proof in a case such as this. Ordinarily, the party claiming entitlement to alimony or child support has the burden of proof in the initial setting of the award, while the party seeking a modification bears the burden of proof in a subsequent hearing on a request for modification. This case does not fit squarely into either category, because the hearing on the request to modify is also the first judicial determination of the issue.
The usual rule is that the party invoking the court's power to decide a particular question bears the burden of proof on that question. We are therefore of the opinion that the party seeking a modification of an alimony or child support award provided in a consent judgment must bear the burden of proving that a modification is *1274 in order. While the party seeking a modification need not prove a change in circumstances, he must prove that, given the circumstances existing at the time of the hearing on the rule for modification, the amount of alimony or child support then being paid or received by him should be changed. In this case, appellee had the burden of proving at the hearing either that appellant was not in need of the amount of alimony and child support she was receiving, or that appellee did not have sufficient income or means to pay that amount. La.C.C. arts. 160, 231.
There are three different standards of review which must be applied in a case such as this. Those standards were summarized in Davy v. Davy, 469 So.2d 481 (La.App. 3d Cir.1985):
"When we review a trial judge's decision in a case such as the present, we must make three determinations, under three different standards of appellate review. First we must determine whether the trial judge correctly applied the proper legal standard or standards. We do not defer to the discretion or judgment of the trial judge on issues of law. Second, we must examine the trial judge's findings of fact. We will not overturn the trial judge's factual determinations unless, in light of the record taken as a whole, they are manifestly erroneous (or clearly wrong). Third, we must examine the propriety of the alimony award. If it is within legal limits and based on facts supported by the record, we will not alter the amount of the award in the absence of an abuse of the trial judge's great discretion to set such awards." 469 So. 2d 482.
Davy concerned only the propriety of an alimony award, but the quoted principles are equally applicable in determining the propriety of an award for child support.
In this case we find that the trial court misapplied the relevant legal standards by relying on appellant's possession of the family home and on her "future earning capacity" in reducing the amounts of alimony and child support payments.
Appellant submitted to the court an affidavit of average monthly income and expenses. Under the heading, "Income," are listed the amounts in alimony and child support she had been receiving under the consent judgment. From the alimony figure is subtracted $264.50 for "taxes" (presumably income taxes), leaving a net disposable income, from alimony and child support combined, of $4735.50.
The total of the monthly expenses listed on the affidavit for appellant and her daughter is $4763.90. Of this amount, appellant admitted that $207.33, representing a monthly average of accountant's fees incurred in connection with a community property settlement between the parties, should not have been included, payment on those bills having been completed. This leaves a total of $4556.57 per month in expenses.
Although the amounts for some of the items of expenses on the affidavit appear somewhat larger than average, the list as a whole is reasonable, and, except with regard to the accountant's fees already mentioned, there is nothing in the record to indicate that the affidavit does not accurately reflect the average monthly income and expenses of appellant and her daughter.
If appellant is to pursue career training as was suggested by the trial court, she will undoubtedly incur expenses in addition to those on the list, including educational and child care expenses. The amount awarded in the consent judgment for alimony and child support would thus appear to be a reasonable approximation of the amount necessary to meet the reasonable expenses of appellant and her child. Unless appellant is able to contribute to the payment of these expenses, she is in need of the entire amount awarded in the consent judgment.
The trial court appears to have based the reduction in payments on its perception of appellant's ability to contribute to the payment of the expenses. In appraising appellant's ability to contribute, the court fell *1275 into error by considering appellant's possession of the family home and furnishings, and her projected future earning capacity.
Appellant has no source of income other than the alimony and child support payments she is receiving from appellee. She listed no other source of income in her affidavit, and no evidence of any other source of income was submitted at the hearing. She has no assets of any consequence other than the family home and furnishings, an automobile and a savings account of approximately $5000.00 in Jennifer's name.
Appellant obtained title to and possession of the family home and its furnishings by means of the community property settlement between the parties. Under that settlement she also assumed the obligation of satisfying the outstanding indebtedness of approximately $95,000.00 on the purchase money loan for the home, which is secured by a mortgage on the home. Since the time of the settlement, she has been paying the monthly loan installments of $952.89, as well as all other expenses incident to home ownership, including repair costs, insurance costs, and real estate taxes. These expenses are itemized in appellant's affidavit of income and expenses.
It is clear that appellant's possession of the home and its furnishings does not add to her ability to meet her needs and those of her child. The necessary benefit it provides, shelter for appellant and Jennifer, must be paid for out of the amounts appellant receives in alimony and child support.
The trial court apparently relied on appellant's equity in the house as an available source of funds to contribute toward furnishing the needs of appellant and Jennifer. In granting the reduction in payments, the trial court noted that the house and its furnishings "constitute substantial assets." Counsel for appellee stresses in his brief that the value of the house greatly exceeds the amount remaining to be paid on the house loan, and it is clear from the testimony of both parties that this is indeed the case. However, any equity appellant may have in her home and its furnishings is not a proper consideration in setting the amounts of alimony and child support.
For appellant to utilize the value of the equity in her house it would be necessary for her to sell the house, and the law does not require her do this. The jurisprudence clearly establishes that one is not required to sell her house and deplete the proceeds before she is entitled to receive alimony. See eg. Sonfield v. DeLuca, 385 So.2d 232 (La.1980), and Hilton v. Hilton, 451 So.2d 90 (La.App. 3d Cir.1984). According to the same principle, neither is one required to suffer a reduction in alimony or child support merely because it is theoretically possible for her to sell her house and furniture and contribute the proceeds to the maintenance of herself and her child.
When the installments on the home loan are completed, appellant will, in effect recognize an increase in disposable income equal to the amount of the monthly installment. This would be a relevant and proper consideration should a modification in the award be sought at that time.
The trial court also erred in considering appellant's "future earning capacity." In refusing to terminate alimony, the court specifically found that appellant would require extensive training in order to enter any field of endeavor. We find no error in this factual determination, which is essentially a finding that, for practical purposes, appellant's earning capacity at the time of the hearing was zero. However, in granting the reduction, the court stated that it "considered important" appellant's "future earning capacity."
While appellant's present earning capacity is a proper item of consideration, her future earning capacity is not. Appellant's future earning capacity is irrelevant to the determination of her present ability to meet the needs of herself and of her child. In this respect, the present case differs from the case of Ware v. Ware, 461 So. 2d 467 (La.App. 5th Cir.1984), in which *1276 it was held that the trial court was within its discretion in terminating alimony payments to a recipient who had a demonstrated present capacity to earn sufficient income to meet her needs. In this case the appropriate time to consider appellant's future earning capacity is the future time at which that earning capacity is attained, and appellee is free to seek a modification at that time.
Excluding the equity appellant has in her home and her "future earning capacity," which we have determined should not have been considered as resources available to meet the needs of appellant and her daughter, appellant had, at the time of the hearing no income and no significant assets available for this purpose. Appellant is therefore in need of the entire amount of alimony and child support provided in the consent judgment, which, as we have determined, reasonably approximates the amount of her average monthly expenses.
It remains to be determined whether appellee has sufficient income or means to pay the amount needed by appellant. This issue was not addressed by the trial court in its reasons for judgment.
In the affidavit of income and expenses which he submitted to the trial court, appellee placed his gross monthly income at $8625.00. This amount is consistent with his testimony at the hearing, wherein he estimated his gross monthly income at approximately $8500.00. Of this figure, appellee testified that $2700.00 was attributable to his salary as an employee of an enterprise referred to as "Custom Dye and Insert," (which shall be referred to herein as "CDI,") the remainder being attributable to his salary as an employee of Devin Services, Inc., (DSI), a corporation of which appellee is the sole shareholder.
In his testimony at the hearing appellee conceded that financial balance sheets prepared for DSI by Sikes, Frederick and Company a professional accounting firm, reflect a net profit for the twelve-month period ending August 31, 1984, of $166,473.68, or a monthly average of $13,872.81, and of $26,540.43, and $22,418.19 for the months of September and October, 1984, respectively. Appellee claimed however that the profit figures on the balance sheets were inflated for "bank purposes." He estimated that the true net profit figure for the twelve-month period ending August 31, 1984 was approximately $130,000.00, and said that he could not estimate the extent of exaggeration of the September and October figures.
Even assuming appellee's claim that the balance sheets for DSI are inflated is correct, the evidence in the record does not support appellee's contention that he cannot afford to pay $5000.00 per month in alimony and child support. Appellee testified that he has complete control over the affairs of DSI, including control over the amount of his own salary. Using appellee's estimate of the true net profits for the period ending August 31, 1984, the average net monthly profit for DSI for that period was $10,833.33. Other than the naked assertion that the company could not afford to pay more than he is receiving, appellee offered no explanation for his failure simply to draw a larger salary.
It has been held that a person cannot avoid his alimony obligation by voluntarily leaving his employment. Ryan v. Ryan, 401 So. 2d 514 (La.App.2d Cir.1981). Similarly one cannot avoid all or part of his alimony or child support obligations by exercising his exclusive control over a corporation wholly owned by him to limit his own salary. Since appellee has complete discretion in managing the finances of DSI, the profits of the corporation must be considered his profits.
When appellee's $2700.00 monthly salary from CDI is added to the profits from DSI, appellee's average monthly income for the one year period ending in August, 1984 was over $13,500.00. Furthermore, the DSI profit figures for September and October, even if exaggerated indicate that this income has subsequently increased. Sound business practice undoubtedly would require *1277 that a portion of this sum be reinvested in DSI. Nevertheless, the remainder should be more than sufficient to allow appellee to meet his own needs and to pay the amounts of alimony and child support originally awarded.
In sum, we have determined that the trial court erred in its application of the law, and that, when the relevant legal principles are properly applied, considering only the circumstances existing at the time of the hearing on the rules, the evidence in the record does not support a reduction in alimony or child support payments.
The judgment of the trial court is reversed.
REVERSED AND REMANDED.
NOTES
[*] Judges Arthur J. Planchard, of the 14th Judicial District Court, and Michael J. McNulty, Jr., of the 16th Judicial District Court participated in this opinion by appointment of the Louisiana Supreme Court as Judges Pro Tempore.