677 So.2d 1042 (1996)
Barbette Campo, Wife of Christopher Curtis ROBERTS
v.
Christopher Curtis ROBERTS.
No. 95-CA-1626.
Court of Appeal of Louisiana, Fourth Circuit.
June 5, 1996.
Rehearing Denied August 29, 1996.
*1044 Lynne W. Wasserman, Metairie, for Plaintiff/Appellant.
Daniel L. Dysart, A Professional Law Corporation, Daniel L. Dysart, Faye Anne Dysart, Chalmette, for Defendant/Appellee.
Before LOBRANO, LANDRIEU and MURRAY, JJ.
LANDRIEU, Judge.
This case arises from the trial court's denial of Barbette Campo's request for a rule to increase child support. Campo was divorced from Christopher Curtis Roberts on January 24, 1992. The parties entered into a consent decree that awarded the care and physical custody of the minor children, Christopher Curtis Roberts, Jr. and Cobby Roberts, to Campo. The agreement obligated Roberts to pay child support of $500.00 per month and maintain hospital insurance for the children and each party to pay one-half of the tuition at Lynn Oaks School.[1]
On July 26, 1994, Campo filed a Rule to Increase Child Support claiming a change in circumstances. The court denied Campo's request stating that she did not prove a change in circumstance sufficient to merit an increase in her award. A trial court's child support order will not be reversed except for abuse of discretion. Hogan v. Hogan, 549 So.2d 267, 271 (La.1989). Campo claims that the court erred:
1. In finding that she failed to prove a change in circumstances, and
2. In failing to award support retroactive to the date of the original filing of the rule to increase.

ASSIGNMENT OF ERROR NO. 1
Campo has the burden of proving a change in circumstance subsequent to the prior judgment because she is the party seeking the increase. Preis v. Preis, 610 So.2d 163, 164 (La.App. 3d Cir.1992), writ denied, 612 So.2d 103 (La.1993). La.Rev. Stat.Ann. 9:311(A) (West 1991) states:
An award for support shall not be reduced or increased unless the party seeking the reduction or increase shows a change in circumstances of one of the parties between the time of the previous award and the time of the motion for modification of the award.
Campo cites three changes in circumstances to support her request for an increase in support. The first change that Campo asserts is that she now stays home to *1045 care for a new baby. La.Rev.Stat.Ann. 9:315.9 (West 1991) states:
If a party is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of his or her income earning potential, unless the party is physically or mentally incapacitated, or is caring for a child of the parties under the age of five years.... (Emphasis added).
Campo's youngest child is not an issue of her marriage to Roberts. Therefore, Campo's voluntary unemployment is not cause for increased child support.
Second, Campo asserts that she has additional expenses because Cobby, the younger child of her marriage to Roberts, now attends Lynn Oaks School. The original consent decree stated that "[e]ach party shall pay one-half of the tuition at Lynn Oaks School." Campo's request for an increase is based on her having to pay one-half of Cobby's tuition, about $165.00 per month, in addition to one-half of Christopher's tuition.[2] This additional expense is not sufficient to warrant a change of circumstances. Campo further alleges that she has additional costs because the children are older and involved in more activities. However, she presented no evidence to prove increased expenses other than Cobby's school tuition.
Last, Campo claims that circumstances have changed since the consent decree because Roberts' income is substantially higher now than it was at the time of the consent decree. A substantial increase in the incomes of the parents equates to a change in circumstances. Humphrey v. Humphrey, 27,238 (La.App. 2d Cir. 8/23/95), 660 So.2d 92, 94. The parent seeking an increase in payments is required to demonstrate an improvement in the payor's financial condition. Bordenave v. Bordenave, 93-1183 (La.App. 4th Cir. 1/13/94), 631 So.2d 519, 520, writ denied, 94-0409 (La. 4/4/94), 635 So.2d 1108.
The record from the hearing on the rule to increase includes Roberts' 1991 personal income tax return, but that return is insufficient to determine Roberts' income at the time of the consent decree hearing which was conducted on June 28, 1991. La.Rev.Stat. Ann. 9:315.2(A) (West 1991) states:
Each party shall provide to the court a verified income statement showing gross income and adjusted gross income, together with documentation of current and past earnings. Suitable documentation of current earnings shall include but not be limited to pay stubs, employer statements, or receipts and expenses if self-employed. The documentation shall include a copy of the party's most recent federal tax return. A copy of the statement and documentation shall be provided to the other party. (Emphasis added).
The record does not indicate what documentation or information the court used, at the time of the hearing, to determine whether the amount stipulated in the consent decree was reasonable in light of the child support guidelines.[3]
Public policy dictates that parents should support their children in a manner comparable to their income and that judicial decisions should be made in the best interest of the children. See La.Civ.Code Ann. art. 227 (West 1993); Fuge v. Uiterwyk, 613 So.2d 717 (La.App. 4th Cir.1993), writs denied, 619 So.2d 574 (La.1993) (children residing with their mother are entitled to the same standard of living as if they resided with their father). Accordingly, we will review Campo's assertions to determine whether the current child support obligation is reasonable based on the parents' income.
Campo bases her claim of Roberts' increased income on the following facts:
*1046 (1) Roberts' income tax return of 1993 lists an income that is double what it was when child support was awarded;
(2) Roberts' gross income should include the profits from his personally owned business;
(3) Roberts is hiding income from his cash only business; and
(4) Benefits Roberts derives from having his living expenses paid by his business should be included in determining his gross income.

Claim That Income Has Doubled
Campo claims that Roberts' income at the time of the consent decree (June 28, 1991) was $10,500.00 and that his 1993 income tax return lists his salary as $20,000.00. Campo concludes that her support should be raised because Roberts' income has, in effect, doubled. This argument fails for two reasons. First, it is unclear how Campo arrived at the $10,500.0 that she quotes. She submitted, as evidence, Roberts' 1991 income tax returns which lists his annual salary as $15,802.00. Nevertheless, the record does not prove what Roberts' income was at the time of the consent decree.
Second, if this Court accepted the fact that Roberts' income had doubled to the amount on his 1993 income tax return and used the tables provided in La.Rev.Stat.Ann. 9:315.14 (West Supp.1996), Roberts' child support obligation would be $452.00 which is less than the $500.00 he currently pays. This claim does not support an increase in Roberts' child support payments.

Business Profits are Included in Gross Income
Campo makes a convincing argument that the amount listed on Roberts' personal 1993 income tax return does not reflect all of his gross income. La.Rev.Stat.Ann. 9:315(4)(c) (West 1991) states:
(4) "Gross income" means:
(c) Gross receipts minus ordinary and necessary expenses required to produce income, for purposes of income from self-employment, rent, royalties, proprietorship of a business, or joint ownership or a partnership or closely held corporation. "Ordinary and necessary expenses" shall not include amounts allowable by the Internal Revenue Service for the accelerated component of depreciation expenses or investment tax credits or any other business expenses determined by the court to be inappropriate for determining gross income for purposes of calculating child support.
Campo correctly asserts that Roberts' gross income is not only the salary he earns[4] but also his hardware business' gross receipts minus its ordinary and necessary expenses.
Roberts' 1993 Income Tax Form 1120, the corporate tax return for Poydras Hardware which Roberts exclusively owns, line 30, lists the taxable income of the business as $61,551.00. Roberts subtracted the amount of taxes that he paid from the balance which would yield a net income. Campo disagrees that the income tax paid should be deducted when determining gross income.
The child support guidelines establish the basic child support obligation on the combined adjusted monthly gross income of the parents and the number of children. (Emphasis added). Mayo v. Crazovich, 24,796 (La.App. 2d Cir. 6/23/93), 621 So.2d 120, 123. Roberts' accountant testified that
there is what we call book income which would be his net profit and his taxable income which can be two different figures and usually is. His taxable profit was $61,000. His net book income, we will have to back out the income tax ... which was about $10,000. So, his net book income would be about $50,000.
In applying La.Rev.Stat. 9:315(4)(c), the court in Miller v. Miller, 610 So.2d 183, 185 (La.App. 3d Cir.1992), used the pre-tax income of a self-employed individual to calculate his gross income. Accordingly, the "gross income" of Roberts' corporation, as contemplated by La.Rev.Stat. 9:315, is $61,551.00.
*1047 Campo asserts that the depreciation of the business should be added to this balance. Roberts counters this claim citing McTurner v. McTurner, 26,123 (La.App. 2d Cir. 9/21/94), 649 So.2d 1, writ denied, 94-2876 (La. 1/27/95), 650 So.2d 241. In McTurner, the appellate court upheld the exclusion of Mr. McTurner's business depreciation expenses from his gross income because the only evidence submitted to prove the amount of the depreciation was the unsubstantiated testimony of a certified public accountant. Id. at 5. However, the instant case is distinguishable from McTurner because, rather than relying on unsubstantiated testimony, Campo submitted the 1993 tax returns of Roberts' corporation which lists the depreciation expense as $22,305.00. Under the language of La.Rev.Stat. 9:315(4)(c), the amount of depreciation is not an ordinary and necessary expense and is included in his gross income. Miller v. Miller, 610 So.2d at 185. Adding the depreciation expense, the gross income of Roberts' business in 1993 was $83,856.00.
Roberts argues that money used to pay principal on the business' mortgage ($11,875.00) and buy equipment for the business ($20,703.00) should be subtracted from the profits. However, these are not "ordinary and necessary expenses" and Roberts gives no authority as to why these amounts should be deducted. He further claims that the remaining amount ($24,000.00) was "held in the checking account for inventory and supplies" and should be subtracted from the profits. Again, Roberts gives no authority for excluding this amount from the profits. Irrespective of how Roberts chooses to spend his profits, they are included as gross income when computing his child support obligation.
Last, Roberts argues that the trial court should not have used his 1993 income tax returns to determine his gross income because Campo filed the rule for increase in the second half of 1994 and the trial was heard in the beginning of 1995. Roberts argues that the court should consider his financial condition at the time of the trial based on his accountant's projections. We disagree. Such testimony is not substantive proof whereas the tax returns are. See McTurner v. McTurner, 649 So.2d 1. Also, La.Rev.Stat. 9:315.2(A) requires a "copy of the party's most recent federal tax return" to verify gross income.

Additional Deposits in Roberts' Personal Checking Account
Campo claims that Roberts' personal income in 1993 was substantially higher than what he reported on his personal income tax return. That year Roberts deposited over $48,000.00 into his personal checking account although his salary was only $20,000.00. When questioned about these deposits, Roberts initially had no explanation. However, upon cross-examination he remembered that the deposits were customers' paychecks given to him to cash at the hardware store. He stated that he routinely cashed customers' paychecks with money from the store's cash register, deposited the checks into his personal account, and then withdrew money from his personal account to reimburse the business.
As further evidence that Roberts' personal income is higher than what he claims, Campo points out that in late 1994, Roberts purchased a tract of land in Slidell for $50,000.00 cash. Roberts explained that the money was loaned to him by his parents but could not produce any documents or testimony to substantiate his claim. When asked if he had a check from his parents or a withdrawal slip from their bank, he explained that the $50,000.00 was cash his parents had in the house so there was no record of any transfer of funds.
While this Court finds Roberts' explanations difficult to believe, the trial court accepted them and it is the trier of fact who determines the relative credibility of the witnesses. Fortune v. City of New Orleans, 623 So.2d 701 (La.App. 4th Cir.1993), writ denied, 629 So.2d 1126 (La.1993). We will not disturb this finding.

In-Kind Payments
Campo asserts that the benefits which Roberts derives from having his living expenses paid by his business are part of his gross income. La.Rev.Stat.Ann. 9:315(4)(b) (West 1991) includes in gross income

*1048 [e]xpense reimbursement or in-kind payments received by a parent in the course of employment, self-employment, or operation of a business, if the reimbursements or payments are significant and reduce the parent's personal living expenses. Such payments include but are not limited to a company car, free housing, or reimbursed meals ...
Roberts lives rent-free in a five room apartment that he built above his business after his divorce using business supplies. In 1993, his business paid for a telephone line ($262.00 per month) and electricity usage ($535.00 per month) jointly used by the hardware store and the apartment. Roberts' only vehicles are two trucks that are owned by the business which pays the insurance and operating costs of the vehicles (costs in 1993 were $1,525.00).
Roberts asserts that, although he uses business owned assets, his use does not result in an increase in business expenses and, therefore, should not be included in his gross income citing Widman v. Widman, 619 So.2d 632 (La.App. 3d Cir.1993). In Widman, Mr. Widman moved into his office after he separated from his wife. Mrs. Widman claimed that the free telephone and electricity usages were in-kind payments which should be included when determining Mr. Widman's gross income. Id. at 636. The appellate court held that the telephone expense was the same whether Mr. Widman lived at the office or not and was not an in-kind payment. Id. However, the court found that the electrical use and cost increased due to his living at the office and, therefore, was an in-kind payment. Id. The court found that only those expenses that had increased because Mr. Widman resided at the office and that the business had to pay were in-kind payments and should be included in computing "actual" gross income. Id.
It is difficult to reconcile Widman with the language of La.Rev.Stat. 9:315(4)(b) which includes, as gross income, payments received in the course of self-employment that are significant and reduce the parent's personal living expenses. Roberts is living rent-free in a two bedroom apartment he had built above his hardware store. This reduces his personal living expenses by a minimum of $400.00 per month. He also does not pay for a telephone or electricity which saves him a minimum of $25.00 and $125.00, respectively, per month. These payments are significant and dramatically reduce Roberts' living expenses. Accordingly, his gross income should include $550.00 per month or $6,600.00 annually for these in-kind payments made by his business.
Roberts has use of two company owned vehicles. Although he claims he rarely uses these trucks except for business, their availability for his use has reduced his personal living expenses. Based on the 1993 reported operating expense of two vehicles, we will assign 50% of the operating costs of one vehicle, or $381.00, towards his gross income as an in-kind payment by his business. Roberts' total in-kind payments from his business in 1993 were $6,981.00.

Total Gross Income
Mr. Roberts' gross income, based on the 1993 tax returns admitted into evidence, is $110,837.00 which includes $20,000.00 in salary, $83,856.00 from business profits, and $6,981.00 for in-kind payments. We find that the trial court abused its discretion in finding that Campo did not prove a significant increase in Roberts' gross income.
Roberts' monthly gross income is $9,236.00. Using the schedule in La.Rev. Stat.Ann. 9:315.14, Roberts' monthly obligation for the support of his two children is $1,582.00.[5]

Review of Previous Consent Decree
Because one portion of the consent decree has been modified, the rest of the consent decree shall be examined to determine whether further modifications are necessary. The consent decree obligates both parents to equally share school tuition at Lynn Oaks School and obligates Roberts to pay hospital insurance. These obligations were agreed upon concomitant with a $500.00 child support payment from Roberts to Campo.
*1049 Campo testified that tuition for the two children at Lynn Oaks School is about $4,000.00 per year per child. This is corroborated by a cancelled check in the record issued by Roberts to Lynn Oaks School in the amount of $1,989.00 for Christopher's tuition. The tuition costs for each parent for two children is about $330.00 per month. La.Rev.Stat.Ann. 9:315.6 (West 1991), in pertinent part, provides that:
By agreement of the parties or order of the court, the following expenses incurred on behalf of the child may be added to the basic child support obligation:
(1) Any expenses for attending a special or private elementary or secondary school to meet the particular educational needs of the child.
Roberts and Campo agreed that their children would attend a private school. By agreement of the parties such expense can be added to the basic child support obligation. If the parties agree that the children attend private school, the father can be required to pay, pro rata, his share of the tuition in addition to the basic child support obligation. Corley v. Corley, 600 So.2d 908, 909 (La.App. 4th Cir.1992). Roberts pro rata share should be 100% because Campo has no income. However, since the parties agreed previously to share the expense we will not disturb that portion of the consent decree.
Currently, Roberts maintains hospitalization insurance for his children as per the consent decree. Campo voluntarily maintains additional health insurance on the children to cover routine health costs and visits to the doctor. Campo testified that this additional insurance costs $102.00 per month and is obtained through her current husband's company. La.Rev.Stat.Ann. 9:315.4 (West Supp.1996) states that:
In any child support case, the court may order one of the parties to enroll or maintain an insurable child in a health benefits plan, policy, or program. In determining which party should be required to enroll the child or to maintain such insurance on behalf of the child, that court shall consider each party's individual, group, or employee's health insurance program, employment history, and personal income and other resources. The cost of the health insurance premiums incurred on behalf of the child shall be added to the basic child support obligation. (Emphasis added).
The law requires the cost of health insurance to be added to basic child support. Accordingly, Roberts is responsible for maintaining hospitalization for the children. However, if Campo chooses to voluntarily pay for increased benefits, she is responsible for any additional costs.

ASSIGNMENT OF ERROR NO. 2
Campo asserts that the increase in payment should be retroactive to July 26, 1994, the date she filed the rule. La.Rev. Stat.Ann. 9:315.21(C) (West Supp.1996) states that "[e]xcept for good cause shown, a judgment awarding, modifying, or revoking a final child support judgment shall be retroactive to the date of judicial demand." The burden is on the defendant to show good cause for not making the rule retroactive. Broussard v. Broussard, 532 So.2d 281, 283 (La.App.3d Cir.1988). Consequently, Roberts should be allowed the opportunity to show cause why the judgment should not be retroactive.
For the above reasons, the trial court ruling as to the amount of child support is reversed. Roberts is ordered to pay monthly child support in the amount of $1,582.00. Roberts and Campo are ordered to equally split Christopher and Cobby's tuition at Lynn Oaks School. Roberts is ordered to maintain hospitalization insurance for the children. The case is remanded to the trial court to determine whether the child support payments should be made retroactive to the date the rule to increase was filed.
REVERSED AND REMANDED.
NOTES
[1] At the time of the agreement, only Christopher attended Lynn Oaks School.
[2] The record indicates that tuition at Lynn Oaks School is about $4,000.00 annually per child.
[3] La.Rev.Stat.Ann. 9:315.1(D) (West 1991) states:

The court may review and approve a stipulation between the parties entered into after the effective date of this Part as to the amount of child support to be paid. If the court does review the stipulation, the court shall consider the guidelines set forth in this Part to review the adequacy of the stipulated amount, and may require the parties to provide the court with the income statements and documentation required by R.S. 9:315.2.
[4] La.Rev.Stat.Ann. 9:315(4)(a) (West 1991) includes in gross income

"[t]he income from any source, including but not limited to salaries, wages, commissions..."
[5] The record contained no evidence of any past salary that Fahm earned. Therefore, her earning capacity could not be entered into the calculation.