693 So.2d 264 (1997)
Karen Hipperson BAGGETT, Plaintiff-Appellant,
v.
Philip Gordon BAGGETT, Defendant-Appellee.
No. 96-453.
Court of Appeal of Louisiana, Third Circuit.
April 23, 1997.
*265 Jesse Phillip Terrell, Jr., Alexandria, for Karen Hipperson Baggett.
James Richard Mitchell, Leesville, for Philip Gordon Baggett.
Before YELVERTON, KNOLL[1] and SULLIVAN, JJ.
KNOLL, Judge.
In this divorce case, Karen Baggett appeals the trial court's determinations of alimony pendente lite and child support. Because we find that the trial court failed to apply the proper legal standards in determining the awards of alimony pendente lite and child support, we amend the judgment of the trial court and increase the awards of award alimony pendente lite and child support.

FACTS
Karen Baggett and Philip Baggett had been married for nearly twenty-six years when Karen filed for divorce on January 12, 1995. They had three children, Timothy, Steven, and Jonathan. The youngest child, Jonathan, was a minor at the time of trial in this case. Karen Baggett is employed by the Beauregard Parish School Board, while Philip is the president and sole shareholder of a closely held corporation, Baggett Duplicating Products, Inc.
In her petition for divorce, Karen requested that she be named custodial parent of Jonathan, and that Philip provide alimony pendente lite and child support. This matter was initially referred to a hearing officer of the 36th Judicial District Court, and after two hearings, the following determinations were made: Philip's monthly income as president of Baggett Duplicating Products, Inc. was $6,833. Karen's monthly income, based *266 on her 1994 W-2 statement was $1,972. Based upon these income figures, the hearing officer set Philip's share of the child support payments at $1,107 per month. The hearing officer also awarded alimony pendente lite of $1,200 per month.
Philip requested a review of the award of the hearing officer by the district court, and a hearing was set for June 19, 1995. At the hearing, extensive testimony was taken concerning the family's financial status, Philip's income, and his contributions to the household expenses prior to the break up of the marriage. It became evident that in addition to Philip's salary, Baggett Duplicating Products, Inc. paid many of the family's expenses, including insurance, utilities, salaries to the children, maid service, and household expenses. Because of this, the trial court had difficulty in accurately determining Philip's income. On June 29, 1995, the trial court appointed an expert witness to review the financial statements of Philip and Baggett Duplicating Products, Inc. In written reasons, the court stated:
It is clear from the testimony of both Mr. and Mrs. Baggett that it has long been the practice of the family to maintain a comfortable standard of living by utilizing the structure of a small, closely held business corporation as an entity for the payment of many expenses that inure directly to the benefit of the family. Whether these "business expenses" are legitimate under the provisions of the U.S. Income Tax Code is of no moment to the Court. However, it is incumbent upon the Court under the provisions of LSA-R.S. 9:315(4) to consider the benefits derived from such creative tax accounting, which in this case apparently makes meaningless the personal income tax returns of the Baggetts in attempting to reach an understanding of the meaning of maintenance "in the same standard of living to which (the dependant) was accustomed prior to the (dissolution of the family.)"
The trial court appointed Charles E. Scarbrough, a C.P.A. in Beauregard Parish, to examine the financial statements of Baggett Duplicating Products, Inc. and determine the annual benefit derived by Philip from the corporation. On October 3, 1995, Mr. Scarborough rendered a report in which he estimated Philip's monthly income at $3,085.
After a hearing on November 6, 1995, the trial court determined that Philip's monthly income was $3,300. In its oral reasons for judgment, the trial court stated that it accepted the conclusions made by Mr. Scarbrough, except for Mr. Scarbrough's exclusion of payments made by Baggett Duplicating Products, Inc. to the Baggett children. The trial court reduced Philip's monthly child support obligation to $653 and reduced alimony pendente lite to $600 per month. The reduction of child support and alimony pendente lite was made retroactive to the filing of divorce, and Karen was ordered to return $12,540 to Philip for overpayments he had made. The trial court also denied Karen's claim for permanent alimony.
Karen appeals, asserting that the court erred: 1) in relying on Mr. Scarbrough's report and testimony, 2) in underestimating Philip Baggett's income, 3) in reducing the award of the hearing officer for alimony pendente lite, and 4) in reducing the amount of the child support award.

STANDARD OF REVIEW
There is a three-tiered standard which must be applied in reviewing a trial court's award of alimony and child support. In Davy v. Davy, 469 So.2d 481(La.App. 3 Cir.1985), we stated:
When we review a trial judge's decision in a case such as the present, we must make three determinations, under three different standards of appellate review. First, we must determine whether the trial judge correctly applied the proper legal standard or standards. We do not defer to the discretion or judgment of the trial judge on issues of law. Second, we must examine the trial judge's findings of fact. We will not overturn the trial judge's factual determinations unless, in light of the record taken as a whole, they are manifestly erroneous (or clearly wrong). Third, we must examine the propriety of the alimony award. If it is within legal limits and based on facts supported by the record, we *267 will not alter the amount of the award in the absence of an abuse of the trial judge's great discretion to set such awards.
469 So.2d at 482. See also, Moncus v. Moncus, 510 So.2d 1271 (La.App. 3 Cir.), writ denied, 514 So.2d 462 (La.1987).
In the case sub judice, we find that the trial court failed to apply the proper legal standards in determining the amounts of alimony pendente lite and child support. We further find that the trial court committed manifest error in its reliance on the report of Mr. Scarbrough in determining Philip's income from Baggett Duplicating Products, Inc.
The record reflects that prior to the break up of the marriage, the Baggetts had a very comfortable lifestyle. The Baggetts lived in a home valued at $120,000, and they owned a camp on three lots at Toledo Bend, complete with a custom made bass boat. A maid assisted Karen in the Baggett home, and the Baggetts frequently took trips and family vacations. The annual sales for Baggett Duplicating Products, Inc. consistently exceeded $450,000, and on November 1, 1994, the Baggetts' net worth was estimated in excess of $374,000. Steven Baggett testified that money was never an object in the household and that the needs and even the wants of the family were always provided.
The record also reflects that prior to January, 1995, the vast majority of the household expenses were either paid personally by Philip or were paid through Baggett Duplicating Products, Inc. The payment of the family expenses through the corporation yielded a twofold bonus to the Baggetts: first, the payments were listed as expenses of the corporation, reducing the corporation's tax liability, and second, the benefits and services the Baggetts received from the corporation were not reported as personal income by the Baggetts. As president of the corporation, Philip Baggett paid himself a nominal salary of $8,000 for 1994. At the same time, the corporation showed a loss for tax purposes of $18,000.
The record clearly supports that the Baggetts took every opportunity to pay their household expenses through Baggett Duplicating Products, Inc. The Baggett children were on the corporate payroll, although they performed no work for the corporation. The record reflects that Philip used the children's salaries to satisfy personal and family expenses. The corporation paid the salary of the Baggett's maid, although she worked exclusively in the Baggett's home. The corporation paid for the family's life and health insurance, long distance phone bill, alarm bill, and bottled water. Baggett Duplicating Products, Inc. paid for Philip's 1994 GMC van, the maintenance on Karen's 1992 Oldsmobile, insurance on all of the family's cars, cellular phones, and gasoline. The end result of these expenses is that the Baggetts were able to have a relatively affluent lifestyle, while reporting very little income.

ALIMONY PENDENTE LITE
The purpose of alimony pendente lite is to temporarily provide for the spouse who does not have sufficient income for his or her maintenance and to preserve the status quo insofar as maintenance and support are concerned. Mouton v. Mouton, 514 So.2d 528 (La.App. 3 Cir.1987). The determination of alimony pendente lite is based largely upon the resolution of two issues. The primary inquiry is whether the claimant spouse has sufficient income to maintain the economic status quo, that is whether the claimant spouse has sufficient income to maintain the standard of living that existed prior to filing for divorce. Skannal v. Skannal, 25,467 (La.App. 2 Cir. 1/19/94); 631 So.2d 558; writ denied, 94-697 (La.5/13/94); 637 So.2d 1067. The second inquiry concerns whether the defendant spouse has sufficient means to provide the requisite alimony pendente lite. The determination of means with which one spouse is to satisfy the alimony obligation toward the claimant spouse is not based solely on income but also on any resource from which the wants of life may be supplied, and the entire financial condition of the spouse owing such obligation must be examined. Desormeaux v. Montgomery, 576 So.2d 1158 (La.App. 3 Cir.1991).
After the break up of the marriage, Karen remained in the family home, and began paying the household expenses which *268 had previously been paid by Baggett Duplicating Products, Inc. and Philip Baggett. On June 19, 1995, Karen filed an affidavit itemizing her monthly expenses and averring that her expenses exceeded her income by $4,897. Philip also filed an affidavit on June 19, 1995, averring that his monthly income was $2,860 and that his monthly expenses totaled $1,936.
We find that the trial court misapplied the standard for the award of alimony pendente lite. In reducing the monthly award from $1,200 to $600, the trial court considered only the difference in the parties' incomes. The trial court failed to consider the overwhelming evidence that Karen Baggett's income was woefully inadequate to meet even the minimum monthly household expenses, much less maintain the status quo that existed prior to January, 1995. Karen was burdened with all the household bills, and she must now pay not only the bills that Philip once paid, but also the expenses that were once paid by the corporation. The corporation continues to pay many of Philip's personal expenses.
Furthermore, the trial court erred in failing to consider sources other than income from which Philip could fulfill his obligation. The record reflects that Philip had all the assets of the corporation at his disposal, in addition to the unencumbered Toledo Bend property. Furthermore, the record reflects that Philip readily had access to several bank lines of credit as well as frequent loans from his father. Having reviewed Philip's entire financial condition, we conclude that he easily has the means to fulfill the $1,200 per month award set by the hearing officer, and we will reinstate the award of alimony pendente lite in that amount, retroactive to the date of filing.

CHILD SUPPORT
The income Philip derived from Baggett Duplicating Services, Inc. was the central issue in the determination of the amount of child support. La.R.S. 9:315(4) provides for the calculation of gross income for purposes of child support:
(4) "Gross income" means:
(C) Gross receipts minus ordinary and necessary expenses required to produce income, for purposes of income from selfemployment, rent, royalties, proprietorship of a business, or joint ownership or a partnership or closely held corporation. "Ordinary and necessary expenses" shall not include amounts allowable by the Internal Revenue Service for the accelerated component of depreciation expenses or investment tax credits or any other business expenses determined by the court to be inappropriate for determining gross income for purposes of calculating child support. (Emphasis added.)
Noting the great difficulty caused by the Baggett's use of the corporation to pay household expenses, the court appointed Charles E. Scarbrough, a C.P.A., to analyze the corporate accounts. Mr. Scarbrough's report indicates that he attempted to reconstruct Philip's income as if he were an employee receiving salary and benefits from an independent employer. He began with Philip's nominal salary and added in the value of the fringe benefits he received, which had been estimated by Philip's accountant. We note that Mr Scarbrough did not independently evaluate whether the corporate expenses alleged by Philip were "required to produce income" under La.R.S. 9:315(4)(C), nor did he question the valuation of the benefits provided by Philip's accountant. Mr. Scarbrough did not use any information presented by Karen in preparing his report.
We find that the court appointed expert applied the wrong standard in determining the gross income derived by Philip from Baggett Duplicating Products, Inc. Mr. Scarbrough prepared his report and estimated Philip's income as if he were preparing an Internal Revenue Service tax return, in an attempt to minimize tax liability. In fact, his estimate of $3,085 was even lower than Philip's own estimate of $3,360. Mr. Scarbrough failed to count payments for insurance as Philip's income, noting that he felt they were "ordinary and normal" business expenses. Mr. Scarbrough did not find it unusual that the corporation paid for the Baggett's maid or that the children were on the payroll although they did not perform any function *269 on behalf of the corporation. Mr. Scarbrough also failed to scrutinize the expenses and benefits reported by Philip's personal accountant. We find that Mr. Scarbrough failed to make a careful and independent analysis of Philip Baggett's relationship with Baggett Duplicating Products, Inc. Furthermore, Mr. Scarbrough's use of the "ordinary and normal" standard in reviewing the business expenses differs substantially from the "required to produce income" standard provided by La.R.S. 9:315(4)(C).
Fathers and mothers have a mutual obligation to provide the support, maintenance, and education of their children in a manner comparable with their income, and the overriding factor in making in determining the amount of support is the best interest of the children. Roberts v. Roberts, 95-1626 (La.App 4 Cir. 6/5/96); 677 So.2d 1042; Desormeaux v. Montgomery, 576 So.2d 1158 (La.App. 3 Cir.1991); La.R.S. 9:315.1(B). A person cannot avoid his alimony or child support obligation by voluntarily leaving his employment. Similarly, one cannot avoid all or part of his obligations by exercising his exclusive control over a corporation wholly owned by him to limit his own salary. Moncus v. Moncus, 510 So.2d 1271 (La.App. 3 Cir.), writ denied, 514 So.2d 462 (La.1987).
The definition of "gross income" for purposes of child support is far different from the standard used in calculating taxable income by the Internal Revenue Service. We initially note that for owners of closely held corporations, income is not calculated by adding together the value of benefits received with the owner's salary, as done by Mr. Scarbrough. The owner of a closely held corporation is more than an ordinary employee. He has unlimited access to the corporate accounts and has complete control over corporate policy. Because closely held corporations present the opportunity for underestimating the value of the benefits received, 9:315(4) effectively disregards the corporate entity and provides that revenues of the corporation will be treated as revenues of its owner. It further provides that only expenses required to produce income are to be deducted from gross receipts in calculating gross income. Also, "any other business expenses determined by the court to be inappropriate" will be disallowed. Campbell v. Campbell, 95-1711 (La.App. 1 Cir. 10/10/96); 682 So.2d 312; Roberts v. Roberts, 677 So.2d 1042.
We note, as did the trial court, the great difficulty in making an exact determination of the corporation's gross income for purposes of child support. The Baggett's use of the corporation to filter their income makes it impossible to distinguish personal expenses from expenses required to produce income. We also note that the record does not contain the income tax returns for 1994. We therefore will estimate Philip's gross income with the aid of the 1993 income tax returns and the corporation's valuation report, prepared on December 31, 1994.
Using the model devised by the Fourth Circuit Court of Appeal in Roberts v. Roberts, supra, we are able to estimate the combined incomes of Philip Baggett and Baggett Duplicating Products, Inc.
Initially we note that Baggett Duplicating Products, Inc. paid Philip a salary of $11,169 in addition to rent of $7,850 for use of a building personally owned by the Baggetts. Baggett Duplicating Products, Inc. posted a pre-tax profit of $12,870. To this must be added the depreciation expense of $31,723 claimed by the corporation.
Under Roberts, the benefit Philip derives from having his personal expenses paid by the corporation, as well as his personal use of corporation assets, must be included. The record reflects that the corporation paid personal phone bills and vehicle expenses in addition to life insurance, health insurance, travel expenses, and utilities. Whether these are seen as personal expenses detracting from the corporation's income or whether they are fringe benefits, these must be credited to Philip's gross income. We have considered the fact that a portion of these expenses were "required to produce income" for the corporation, and we estimate the value of these benefits that were not required to produce income at $15,000 per year. Accordingly, we determine Philip's annual gross income to be $78,612, or a monthly gross income of $6,551. This amount is in accord with the other indicia of Philip's income *270 in the record, namely, the monthly expenses of the family, the family's overall financial status as described by its members, and the considerable growth in the Baggetts' net worth.
Combining Philip's gross income with Karen's monthly gross income of $2,725 gives a combined monthly gross income of $9,276 and a corresponding general support obligation of $1,013. To this amount we will add $200 for medical insurance, $115 for counseling, and $75 for music lessons for a total support obligation of $1,409. Philip's share of the support obligation is $995 per month, less $200 per month for health insurance paid for by Philip, for a net obligation of $795. The award of child support is retroactive to the date of the original petition.
For the foregoing reasons, the judgment of the trial court regarding alimony pendente lite and child support is amended as follows:
IT IS ORDERED, ADJUDGED, AND DECREED that defendant, Philip Baggett, pay unto plaintiff, Karen Baggett, Seven Hundred Ninety Five and No/100 ($795.00) Dollars per month for the support of his minor child, Jonathan Baggett.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that defendant, Philip Baggett, pay unto plaintiff, Karen Baggett, One Thousand Two Hundred and No/100 ($1,200.00) Dollars per month for alimony pendente lite.
REVERSED AND RENDERED.
NOTES
[1] Justice Jeannette T. Knoll is sitting in this matter pursuant to a temporary assignment by the Louisiana Supreme Court as judge ad hoc of the Third Circuit Court of Appeal.