747 So.2d 183 (1999)
John M. LANGLEY, M.D.
v.
Patricia M. LANGLEY.
No. 98-CA-2759.
Court of Appeal of Louisiana, Fourth Circuit.
November 10, 1999.
*184 Theodore W. Nass, Nass, Tieman & Nass, Gretna, Counsel for Plaintiff/Appellant.
Elizabeth Rue Brennan, Bridgeman Law Firm, New Orleans, Counsel for Defendant/Appellee.
Court composed of Judge JOAN BERNARD ARMSTRONG, Judge JAMES F. McKAY, III and Judge MICHAEL E. KIRBY.
ARMSTRONG, Judge.
This is an appeal from a judgment of the trial court increasing the amount of a divorced father's child support obligation. Both parties appeal. The mother, who is the principal domiciliary parent, contends that the trial court should have increased the child support by a greater amount. The father contends that the trial court should not have increased the child support obligation at all and, in fact, should have decreased the child support obligation. We find no abuse of discretion by the trial court and, therefore, we will affirm the judgment below.
This is the second time that these parties have come before this court with respect to the amount of child support. Many of the facts surrounding the child support issue are set out in our opinion on that prior appeal, Langley v. Langley, 96-0414 (La.App. 4 Cir 9/18/96), 681 So.2d 25, writ denied, 96-2489 (La.12/6/96), 684 So.2d 935 (hereinafter "Langley I"), and we will not repeat them here.
A modification of a child support award must be based upon a change in circumstances and the party seeking the modification has the burden of proving such a change in circumstances. La. R.S. 9:311; Langley I, 681 So.2d at 27; Rosenbloom v. Rosenbloom, 94-1762 (La.App. 4 Cir. 4/26/95), 654 So.2d 877, 879, writ denied, 95-1320 (La.9/1/95), 658 So.2d 1266; State v. Seals, 97-1508 (La.App. 4 Cir. 10/29/97), 701 So.2d 746, 748. If the combined adjusted gross income of the parents exceeds the highest sum on the schedule of the Louisiana Child Support Guidelines, as in the present case, then the trial court is to use its discretion in setting the amount of child support provided that the amount must not be less than the highest amount set in the guidelines. La R.S. 9:315. 10(B); Langley I, 681 So.2d at 27; Rosenbloom, 654 So.2d at 879; Zatzkis v. Zatzkis, 632 So.2d 307, 315 (La.App. 4th Cir. 1993), writ denied, 640 So.2d 1340, 1341 (La.1994). The trial court's decision as to the amount of child support is entitled to great weight and will not be disturbed upon appeal absent a clear abuse of discretion. Langley I, 681 So.2d at 27; Rosenbloom, 654 So.2d at 879; Zatzkis, 632 So.2d at 319; Seals, 701 So.2d at 749; *185 Roberts v. Roberts, 95-1626 (La.App. 4 Cir. 6/5/96), 677 So.2d 1042, 1044. In deciding the amount of child support, consideration must be given to the needs of the children and to the circumstances of the parent who is obligated to pay it. Rosenbloom, 654 So.2d at 879. The totality of the relevant circumstances must be considered. Rosenbloom, 654 So.2d at 879; Zatzkis, 632 So.2d at 315. Where the parents' financial circumstances permit, children who reside with the mother are entitled to the same standard of living that they enjoyed while residing with the father. Zatzkis, 632 So.2d at 317; Roberts, 677 So.2d at 1045.
Dr. Langley and Mrs. Langley have five children who, at present, range in age from seven to fourteen years old. In connection with their divorce, Dr. Langley and Mrs. Langley agreed to a consent judgment which addressed many matters and, among them, provided that Dr. Langley would pay to Mrs. Langley $5,500 per month child support and, for a period of forty-eight months, $4,500 per month alimony. Later, Dr. Langley filed a motion to reduce his child support obligation based upon a large reduction in his income. The trial court reduced Dr. Langley's child support obligation by $500. Dr. Langley appealed that trial court judgment and in Langley I, this court affirmed the amount of the reduction.
Thus, following Langley I, Dr. Langley was obligated to pay $5,000 per month child support and, until the expiration of the forty-eight month alimony period, $4,500 per month alimony. When the expiration of the alimony period neared, Mrs. Langley brought a motion to increase the amount of child support. She alleged that the end of the alimony payments constituted a change of circumstances justifying an increase in child support. She also alleged that, as the children have gotten older, their financial needs have increased. Thus, she sought to increase the child support to $12,210 per month. At the same time, Dr. Langley brought a motion to reduce the child support. He pointed out that, at that time, the youngest child had just reached school age, five years old, and he alleged that, therefore, Mrs. Langley, who had not previously been employed, could get a job and contribute financially to the support of the children. The trial court, after a lengthy trial, increased the child support to $7,500 per month both parties appeal.
The first issue over which the parties disagree is whether Mrs. Langley is voluntarily unemployed. The trial court's Written Reasons for Judgment find, emphatically that Mrs. Langley is voluntarily unemployed. The trial court found that Mrs. Langley could find and undertake "some" employment and make some contribution to the financial support of the children. Mrs. Langley argues that this factual finding of the trial court is erroneous because Mrs. Langley is too burdened with the care of five children (the youngest two of whom she wishes to home school) to hold any job at all. Dr. Langley argues that, because Mrs. Langley is a registered nurse and also has a law degree (although she is not admitted to any bar), and because the youngest child is now of school age, Mrs. Langley can work. The trial court's factual finding that Mrs. Langley is voluntarily unemployed is subject to appellate review under the clearly wrong/manifest error standard and may not be set aside so long as it is reasonable, even if this court would have made a different factual finding as an original matter. E.g., Rosell v. ESCO, 549 So.2d 840 (La. 1989). The trial court put considerable emphasis on Mrs. Langley's education in finding that she could undertake "some" employment and that is not an unreasonable view. Also, the trial court, by finding only that Mrs. Langley could undertake "some" employment, and by ultimately granting a 50% increase in child support, evidently did not impute a large foregone income to Mrs. Langley. We cannot say that the trial court was clearly wrong/manifestly erroneous in finding that Mrs. Langley could undertake "some" employment *186 although certainly the opposite finding also could have been reached. See Cressend v. Cressend, 514 So.2d 225 (La. App. 5th Cir.1987) (mother of three young children justified in remaining home to care for them).
The next issue about which the parties disagree is whether Dr. Langley is voluntarily underemployed. The trial court did not mention this specific issue in its Written Findings of Fact although it did refer to reviewing evidence of Dr. Langley's income. Dr. Langley works as an emergency room physician. He works fourteen shifts, of twelve hours each, per month. He also works some additional hours when he has to stay with a patient beyond the end of his shift and because of paperwork requirements. The trial court found in its Written Reasons For Judgment that Dr. Langley earned $20,000 to $25,000 per month and, although each party puts the emphasis on a different extreme of that range neither challenges the trial court's finding of fact as to Dr. Langley's income.
Mrs. Langley argues that Dr. Langley should work more than fourteen shifts per month She points out that, before their separation, Dr. Langley made about $40,000 per month. Dr. Langley testified that prior to the separation, he worked additional shifts at a second hospital and that, upon stopping that second job, his income dropped form about $40,000 a month to its present range of $20,000 to $25,000 per month. This was addressed by us to some extent in Langley I when we affirmed the $500 reduction in child support which followed the decrease in Dr. Langley's income. Dr. Langley testified that his employer discourages emergency room physicians from working more than thirteen shifts per month because of the high stress and great physical and mental demands of the emergency room compounded by the occurrence of night shifts. He explained that he could not keep up indefinitely the pace which existed when he worked at the second hospital.
We agree with Dr. Langley that he is not voluntarily underemployed. First, he works fourteen twelve-hour shifts per month. That is the equivalent of twenty-one eight-hour normal workdays a month which, particularly with some overtime due to patient needs and paperwork, constitutes full-time employment. Specifically, he works at least one hundred and sixty-eight hours per month which is about forty-two hours per week. Second, Dr. Langley's income of $20,000 to $25,000 per month is by most people's standards, very high. It cannot be said that Dr. Langley is not earning a good income. Third, we credit Dr. Langley's testimony that his work in the emergency room is extremely demanding and that it is not feasible for him to do that work for more than one hundred sixty-eight hours per month indefinitely.
The third issue about which the parties disagree is whether the $4,500 per month alimony was really child support. The trial court's Written Reasons For Judgment do not address this issue. Mrs. Langley argues that the entire $9,500 per month that Dr. Langley was paying was "really" all child support. She points out that, by a September 29, 1993 Interim Consent Judgment, Dr. Langley paid $10,000 per month ($6,800 cash and the $3,200 home note) for his child support and alimony obligations. Thereafter, pursuant to a Consent Judgment read into the record of November 22, 1994, the $10,000 per month through November 1993 was characterized as $10,000 alimony pendente lite and $1 per month child support. The characterization as alimony of virtually all of the $10,000 per month already paid was done to give a tax benefit to Dr. Langley. Also pursuant to that November/March Consent Judgment, Dr. Langley began to pay $4,500 per month (for forty-eight months) alimony and $5,500 (later reduced to $5,000) per month child support. Based on these facts, Mrs. Langley argues that the $4,500 per month to be paid as alimony was, in reality, additional child support *187 characterized as alimony to give Dr. Langley a tax benefit. She then uses her conclusion that the amount of child support was really $10,000 (later reduced to $9,500) to argue that the $7,500 child support set by the trial court's judgment is too low. Dr. Langley testified that the $4,500 per month alimony was, in fact, intended to be alimony and not child support. He points out that the alimony payments were to end after forty-eight months, which was a few months after the youngest child reached school age. He testified that the rationale for forty-eight months alimony was that, after the youngest child reached school age, then Mrs. Langley could work and, at that point, should no longer receive alimony. Dr. Langley argues that the termination of the alimony should be given no consideration with respect to the issue of the amount of child support.
We find Dr. Langley's explanation that the alimony was, in fact, alimony is more plausible than Mrs. Langley's assertion to the contrary. At the time of the November 1993/March 1994 Consent Judgment, the children ranged in age from one to ten years old and it would not make much sense for almost half of their child support to terminate in four years. On the other hand, we understand that Mrs. Langley obviously used the entire $10,000 (later, $9,500) per month to finance the entire household of herself and the children. Expenses such as the house mortgage, utilities and a car cannot really be divided between the mother and the children. In any case, the short answer to this issue is that, if a judgment states that a payment is alimony, then that is how that payment is to be treated by the courts. We cannot adopt a legal analysis based upon the proposition that Judgments do not mean what they say. That being said, we also conclude that the termination of the alimony, which was the termination of all of Mrs. Langley's income, was a change in the financial circumstances which the trial court could take into consideration, along with the increased financial needs of the children as they got older, in deciding whether a change in the amount of child support was justified.
Lastly, Dr. Langley argues that, because no increase in his income was shown, the increase in the amount of child support was improper. But, as discussed above, in this case the changed circumstance justifying the increase in child support was not an increase in the father's income but, rather, the decrease in the mother's income along with the increased financial needs of the children as they have gotten older.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.