STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

J. MARC WILEY

VERSUS

LEOTA GAIL LEVERETT WILEY

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-2006-6578
HONORABLE MARILYN CARR CASTLE, DISTRICT JUDGE

**********

JOHN D. SAUNDERS
JUDGE

**********

Court composed of John D. Saunders, Oswald A. Decuir, and Jimmie C. Peters, Judges.

AFFIRMED.

James Nathan Prather, Jr.
Attorney at Law
P. O. Box 3993
Lafayette, LA 70502
(337) 237-0047
Counsel for Defendant/Appellant:
Leota Gail Leverett Wiley

Andre Doguet
Attorney at Law
1223 St. John Sreet.
Lafayette, LA 70506
(337) 235-7144
Counsel for Plaintiff/Appellee:
J. Marc Wiley

**SAUNDERS, Judge.**

This is a case involving final spousal support. The trial court awarded the wife $200.00 per month in final spousal support under La.Civ. Code Art. 112. The wife appealed contending error by the trial court in fixing that amount and in crediting the husband for voluntary payments made to the wife under La.R.S. 9:321(D). We affirm.

**FACTS AND PROCEDURAL HISTORY:**

Leota Gail Wiley (Gail) and J. Marc Wiley (Marc) were married on October 3, 1969. The couple acquired substantial assets during their marriage. Gail and Marc physically separated on or about October 27, 2006.

Marc filed a petition for divorce on December 20, 2006, and the parties were divorced by judgment dated August 3, 2007. The judgment of divorce also provided that the community of acquets and gains terminated effective December 20, 2006. Gail judicially demanded final support from Marc on July 31, 2009.

The parties partitioned some community assets prior to the trial on final support that is the subject of this appeal. Gail received $213,304.00 as her share of the proceeds in the sale of their marital home. Marc and Gail also divided two financial accounts at Smith Barney in May of 2008. The division of these accounts resulted in Gail receiving $269,511.00. Gail also received $45,498.00 from May of 2007 through January of 2008 as her share of payments received by Marc from the sale of a community owned business. Further, on May 19, 2010, the day of trial, Gail received $158,529.00 from Marc as her share of Marc's 401(k), $12,497.00 as her share of Marc's IRA, and $40,000.00 for payment of Gail's net interest in a rental home owned by the couple. Finally, Marc voluntarily paid support to Gail totaling approximately $100,000.00 prior to the trial regarding final support on May 19, 2010.

After the May 19, 2010 trial, the trial court rendered a ruling and judgment on final spousal support on June 16, 2010. In that judgment, the trial court awarded Gail $200.00 in monthly, final spousal support. Thereafter, on June 21, 2010, the trial court rendered an addendum to the June 16, 2010 judgment. In the addendum, the trial court stated that pursuant to La.R.S. 9:321(D) Marc was entitled to receive credit for voluntary support payments made to Gail from July 31, 2009, the date of judicial demand for final support, to the date Marc ceased making voluntary payments to Gail in January 2010. Gail has appealed both the June 16, 2010 judgment and its addendum dated June 21, 2010.

**ISSUES PRESENTED FOR REVIEW:**

1. Has the Lower Court manifestly erred after having found Gail is entitled to final support, but fixing same at a nominal figure which is inadequate for the support and maintenance of said party?

2. Has the Lower Court manifestly erred in drawing upon its speculation as to present and future health, earning capacity, and financial means of Gail herein after expert medical testimony established otherwise?

3. Has the Lower Court clearly and manifestly erred in not considering the time which may be necessary for the claimant (Gail) to acquire appropriate education, training, or employment should she possibly be considered employable?

4. Has the Lower Court manifestly erred in granting Appellee relief which was not sought, prayed for, or pleadings expanded to include? i.e. Lower Court granting retroactive relief to Appellee by allowing full credit for payments made to Gail prior to final support being sought.

**ISSUE PRESENTED FOR REVIEW NUMBER ONE:**

Gail fails to list specific assignments of error in brief. Rather, she lists the four issues presented for review above and proceeds to address each under the same heading. The first issue she raises is that the trial court was manifestly erroneous in fixing her final support at $200.00 monthly. We do not agree.

The standard of review applicable in reviewing an award of final support is "three-tiered." *Baggett v. Baggett*, 96-453, p. 4 (La.App. 3 Cir. 4/23/97), 693 So.2d 264, 266.

> First, we must determine whether the trial judge correctly applied the proper legal standard or standards. We do not defer to the discretion or judgment of the trial judge on issues of law. Second, we must examine the trial judge's findings of fact. We will not overturn the trial judge's factual determinations unless, in light of the record taken as a whole, they are manifestly erroneous (or clearly wrong). Third, we must examine the propriety of the alimony[, i.e., final support,] award. If it is within legal limits and based on facts supported by the record, we will not alter the amount of the award in the absence of an abuse of the trial judge's great discretion to set such awards.

*Davy v. Davy*, 469 So.2d 481, 482 (La.App. 3 Cir. 1985) (parenthetical in original).

Gail's first issue presented for review questions the appropriateness of the amount of final support as set by the trial court. Thus, if the amount set by the trial court, $200.00 per month, "is within legal limits and based on facts supported by the record, we will not alter the amount of the award in the absence of an abuse of the trial judge's great discretion to set such awards." *Id.*

The factors that a court is to consider when setting an amount for final spousal support are delineated in La.Civ. Code art. 112(B). Louisiana Civil Code Article 112 states:

> A. When a spouse has not been at fault and is in need of support, based on the needs of that party and the ability of the other party to pay, that spouse may be awarded final periodic support in accordance with Paragraph B of this Article.

> B. The court shall consider all relevant factors in determining the amount and duration of final support. Those factors may include:

> > (1) The income and means of the parties, including the liquidity of such means.

> > (2) The financial obligations of the parties.

3

(3) The earning capacity of the parties.

(4) The effect of custody of children upon a party's earning capacity.

(5) The time necessary for the claimant to acquire appropriate education, training, or employment.

(6) The health and age of the parties.

(7) The duration of the marriage.

(8) The tax consequences to either or both parties.

C. The sum awarded under this Article shall not exceed one-third of the obligor's net income.

In the case before us, the trial court found that Gail was entitled to $200.00 per month in final spousal support. It reached this determination after making a thorough review of the testimony and exhibits before it as evidenced by the ruling and judgment on final spousal support located in the record.

First, the trial court found that Gail had monthly expenses totaling $3,566.65. Gail argues that this figure is erroneous, as the trial court failed to consider the rise in her future health care expenses when it reached this total. We find no credence in this argument.

The sole item that Gail submitted to support her argument is a Louisiana Health Plan HIPAA Brochure dated 2007. According to Gail, this brochure, if applied to the situation that she will face in the future, indicates that her premiums for health care coverage may rise to $735.00 per month rather than the $522.66 that was used by the trial court in calculating her expenses. Further, Gail asked the trial court to consider the $5,000.00 yearly deductible as an accruing monthly expense under the plan annunciated in the 2007 brochure. We agree with the trial court that the brochure is

speculative. Moreover, the proper procedural method for Gail to pursue a change in final spousal support should any of her current circumstances materially change in the future is through La.Civ.Code arts. 114 and 116.[1] Thus, we find no abuse of discretion by the trial court in fixing Gail's monthly costs.

Next, the trial court calculated that Gail had received a total of $693,841.00 from the community in addition to a 2002 Toyota Avalon free from any indebtedness. Gail does not dispute that she received this considerable sum. Rather, she alleges that the majority of these funds are subject to penalties and taxes for early withdrawal and that she would only receive sixty percent of the funds available should she withdraw them. Gail fails to point to any evidence in the record to bolster this allegation. Rather, Gail seems to contend that the asset depletion required of her per the trial court's calculations is not reasonable.

Our Supreme Court, in *Loyacano v. Loyacano*, 358 So.2d 304, 311 (La.1978), *rev'd on other grounds*, 375 So.2d 1314 (La.1979) stated the following:

> On the question of what extent of asset depletion, if any, should be required of a spouse before he or she may receive [final spousal support], it is impossible to say what relative weight must be given to any one factor in a particular case. The court should instead apply a rule of reasonableness in light of all the factors named herein and any other circumstance relevant to the litigation. For example, in determining the rate at which a spouse may be required to deplete his or her assets, it may be pertinent to consider the mental and physical health of the

---

[1] Louisiana Civil Code Article 114 states:

> An award of periodic support may be modified if the circumstances of either party materially change and shall be terminated if it has become unnecessary. The subsequent remarriage of the obligor spouse shall not constitute a change of circumstance

Louisiana Civil Code Article 116 states:

> The obligation of final spousal support may be modified, waived, or extinguished by judgment of a court of competent jurisdiction or by authentic act or act under private signature duly acknowledged by the obligee.

5

parties, their age and life expectancy, the parties' other financial responsibilities, the relative ability, education and work experience of the parties, and the potential effect of any contemplated depletion of assets upon the children of the marriage. The problem is of such a nature as to be insusceptible of solution by any exact formula or monetary index, and the court should proceed with great caution and due regard for the probable long range effects of any depletion contemplated.

The trial court's ruling and judgment on final spousal support indicates that it took into account the relevant factors as stated in *Loyacano*. Gail's life expectancy was addressed by Deborah Gordon, a Certified Public Accountant. Gordon testified that Gail could withdraw $2,588.00 monthly in after tax income for her expenses and still have $180,279.00 left in her accounts at the age of eighty-three, Gail's current life expectancy. Further, given that Gail makes these withdrawals, the trial court calculated that Gail would also have approximately $245,000.00 in equity in the home she purchased after the couple divided a portion of their community assets.

Moreover, Gail's health, education, ability, and work experience were taken into account by the trial court in concluding that Gail could contribute $800.00 monthly to her support. There is no evidence raised by either party that the potential effect of any contemplated depletion of assets upon the children would be adverse. Accordingly, we find that the trial court did not abuse its discretion in expecting Gail to deplete some of her substantial assets in order to help support herself.

Finally, the trial court used Gordon's withdrawal figure to conclude that Gail would need approximately $1,000.00 per month to meet her expenses ($3,566.65 in monthly expenses minus the 2,588.00 in withdrawal). Gail's ability to provide $800.00 per month towards her support via working, as discussed in issues presented for review numbers two and three, was then properly subtracted from the $1,000.00 deficit. This left the trial court with the conclusion that Marc should pay Gail

6

$200.00 per month in order to make up the difference between the $1,000.00 per month needed to meet expenses and the $800.00 per month that Gail could provide for herself. We find ample basis in the record to support each calculation made by the trial court. Thus, we find that its conclusion that Marc should pay Gail $200.00 per month in final spousal support was not an abuse of discretion.

**ISSUE PRESENTED FOR REVIEW NUMBER TWO:**

Gail next asserts that the trial court's award of final support was erroneous because "the Lower Court manifestly erred in drawing upon its speculation as to present and future health, earning capacity, and financial means of Gail herein after expert medical testimony established otherwise." This issue questions factual determinations made by the trial court. Therefore, "[w]e will not overturn the trial judge's factual determinations unless, in light of the record taken as a whole, they are manifestly erroneous (or clearly wrong)." *Davy*, 469 So.2d at 482 (parenthetical in original).

The trial court, in ruling as it did regarding Gail's ability to work, stated the following:

> [Gail] testified she is unable to work. She claims her back injury renders her disabled. At trial she introduced the deposition of Dr. David Muldowny. Although he testified her complaints of pain could limit her ability to work, he had not limited her from working or placed any work restrictions on her. He did opine she would be unable to sit at a desk for eight hours a day.

> The evidence indicates [Gail] owned a flooring business for seven years, was a teacher's aide for eight years and worked as a self-taught computer draftsman for a year. She earned a bachelor's degree from the University of Louisiana at Lafayette, graduating with honors. While based upon [Gail's] age and back problems, she cannot be expected to work an eight hour day, five days a week, her education and intelligence qualifies her for at least part-time employment. At a minimum she should be capable of earning $12 per hour and working 20-25 hours per week. After taxes, she would be able to contribute at least $800 per

7

month to her own support.

Gail bases her assertion that the trial court unreasonably found that she could return to work on two reports of Dr. David Muldowny. The first report, dated January 28, 2009, states, "[Gail] has been a housewife for a long time. She is in the process of trying to supplement her income, but does not feel like she will be able to go back to work and I agree." The second report, dated October 27, 2009, states, "I don't think [Gail] is capable of working at this point, primarily because her previous occupation was retail and I don't see that she can sit or stand for more than two or three hours at a time."

We agree that these reports indicate that Gail would not likely be able to work at the time they were made. However, Dr. Muldowny, during his deposition on May 13, 2010, testified to the following:

Q. And obviously, the more mobility [Gail] has and the higher function that she has, the more capable she would be of doing any sort of work, correct?

A. Correct.

Q. All right. And really, whether of not she returned to you, you have not limited her from returning to work in any way, shape, or form?

A. No.

Q. That's totally a decision by Gail?

A. Yes. I don't have the specific restriction for work, correct.

. . . .

Q. All right. And she wants to do a wellness program as well as Pilates. And she's now at a point where she feels like she wants to engage I those activities?

A. Yes.

8

Q. Do you know whether or not she started them?

A. I don't, at this point.

Q. All right. And you gave her a release to do it. So from your standpoint, she's well enough, from a medical - - your medical expertise, to authorize her to engage in those activities?

A. Yes.

. . . .

Q. All right. Can she do routine household chores? Would you have any restrictions for her doing those?

A. No.

Q. Okay. You have not been asked to help her return to work or find work?

A. No.

Q. You haven't been asked by any - - to assist in any vocational rehabilitation efforts of any kind?

A. No.

Q. All right. You're still recommending that she exercise and walk. Those things would strengthen her muscles and her joints, right?

A. Potentially, yes.

Q. And that would be good for her?

A. Yes.

Q. In fact, Doctor, wouldn't work be good - - isn't work typically a good thing for people to engage in? It takes their mind off their physical or medical conditions?

A. Typically, yes. I encourage everyone to try to continue working in some capacity, if they can.

. . . .

Q. So depending on Gail's educational background and her ability to find accommodations for her physical limitations, that would necessarily change your opinions about her ability to work?

9

A.   It potentially could, yes.

. . . .

Q.   Now, if somebody says, "Okay. You're in retail. You've got to sit at this desk for eight hours a day," do you think [Gail] can do it, based on what you've seen in your report and your history on this case?

A.   No.

Q.   Okay. So it's a case-by-case basis is what it comes down to?

A.   Correct.

This testimony indicates that Gail's ability to work depends on the position offered to her. Further, it indicates that Gail's condition has been improving since the reports issued by Dr. Muldowny in 2009.

Additionally, it is clear from his deposition that Dr. Muldowny was unaware of Gail's education when issuing his opinion regarding Gail's ability to work, as he stated in that deposition that he did not know Gail had a degree from ULL. Thus, the contents of his notes from January and October of 2009 regarding Gail's ability to work were limited to an opinion regarding Gail's ability to obtain work in retail.

Finally, according to his deposition, Dr. Muldowny was not asked to help Gail find work, nor was he involved in her vocational rehabilitation. Therefore, it is reasonable that Dr. Muldowny's opinion was not made completely focused on whether Gail was unable to work. Rather, according to his deposition, Dr. Muldowny left that decision up to Gail.

Accordingly, we find that the testimony by Dr. Muldowny does not indicate that Gail is unable to work, as Gail claims. Her argument is that the expert medical testimony made the trial court's conclusion that she could contribute to her support manifestly erroneous. To the contrary, we find that Dr. Muldowny's testimony is not

10

inconsistent with the trial court's factual determination that Gail is able to work. Therefore, Gail's argument lacks merit.

**ISSUE PRESENTED FOR REVIEW NUMBER THREE:**

Gail's next issue listed is that "the Lower Court clearly and manifestly erred in not considering the time which may be necessary for [her] to acquire appropriate education, training, or employment should she possibly be considered employable." Gail fails to point out any evidence in the record to support this assertion, nor does she argue this point in brief. Rather than simply finding that she waives this issue, we will look to the record to determine whether the trial court's finding that Gail could contribute to her support was reasonable.

Again, this issue calls into question factual determinations made by the trial court. Therefore, "[w]e will not overturn the trial judge's factual determinations unless, in light of the record taken as a whole, they are manifestly erroneous (or clearly wrong)." *Davy*, 469 So.2d at 482 (parenthetical in original).

We already found in Issue Presented for Review Number Two that the medical testimony of Dr. Muldowny did not necessitate a finding that Gail could not physically contribute to her support. Here, we will determine whether the record supports a finding that Gail possessed the necessary mental attributes to contribute to her support.

Our review of the entire record supports the trial court's finding regarding Gail's ability to contribute to her own support. Gail operated a floor covering business for seven years which required her to handle inventory, make sales, line up installers, and handle customer complaints. According to Gail she did "the whole schmo." Further, Gail was a teacher's aide for eight years and worked as a self-taught

11

computer draftsman for a year. She accomplished this while raising the couple's children. Further, while balancing these acts, Gail obtained a degree from ULL, with honors, finishing second in her class. Thus, it is clear that Gail already has the education and training to obtain part-time employment earning $12.00 per hour, as she is clearly an intelligent and capable person. Accordingly, given the record on Gail's ability to work, we find that the trial court's determination that Gail was fully able to contribute $800.00 per month to her support is reasonable.

**ISSUE PRESENTED FOR REVIEW NUMBER FOUR:**

In her final issue presented for review, Gail contends that "the Lower Court manifestly erred in granting [Marc] relief which was not sought, prayed for, or pleadings expanded to include? i.e. Lower Court granting retroactive relief to [Marc] by allowing full credit for payments made to Gail prior to final support being sought." We find these contentions lack credence.

These issues raised by Gail pose questions of law. Therefore, "we must determine whether the trial judge correctly applied the proper legal standard or standards." *Davy*, 469 So.2d at 482.

Louisiana Revised Statutes 9:321 (emphasis added) states:

A. Except for good cause shown, a judgment awarding, modifying, or revoking an interim spousal support allowance shall be retroactive to the date of judicial demand.

B. (1) A judgment that initially awards or denies final spousal support is effective as of the date the judgment is rendered and terminates an interim spousal support allowance as of that date.

*(2) If an interim spousal support allowance award is not in effect on the date of the judgment awarding final spousal support, the judgment shall be retroactive to the date of judicial demand, except for good cause shown.*

C. Except for good cause shown, a judgment modifying or revoking a

12

final spousal support judgment shall be retroactive to the date of judicial demand.

*D. Spousal support of any kind, except that paid pursuant to an interim allowance award, provided by the debtor from the date of judicial demand to the date the support judgment is rendered, to or on behalf of the spouse for whom support is ordered, shall be credited to the debtor against the amount of the judgment.*

E. In the event that the court finds good cause for not making the award retroactive to the date of judicial demand, the court may fix the date on which the award shall commence.

F. A judgment extinguishing an obligation of spousal support owed to a person who has cohabited with another person of either sex in the manner of married persons shall be retroactive to the date of judicial demand.

Gail first asserts that the trial court's addendum to the ruling and judgment on final spousal support was not proper because its issuance was never requested of the trial court. We find this assertion misguided.

The trial court, in its initial judgment, failed to credit Marc for his voluntary payments to Gail. Had the initial judgment stood as originally issued, it would have been improper because the trial court failed to consider Marc's voluntary payments to Gail. While it is true that Marc did not file any pleading or request to have this credit granted to him, he need not do so, as the language of La.R.S. 9:321(D) is such that it is mandatory for the trial court to consider voluntary payments made by one spouse to another during the period of time between the date of judicial demand and judgment on final spousal support. Thus, Gail's argument that Marc must request this credit in order to receive it is incorrect.

Moreover, the record indicates that this issue was raised both prior to and during the trial. Thus, Gail's complaint regarding the inability to elicit testimony regarding this issue is unfounded. Gail was aware of La.R.S. 9:321(D) and had ample

13

opportunity to testify regarding its application at trial.

Gail next asserts that, assuming it was proper for the court to render the addendum, it was improperly done because it credited Marc for amounts he paid to Gail prior to her demand for final spousal support. This assertion is unfounded.

The trial court issued the addendum to its ruling and judgment on final support that stated "[Marc] is entitled to receive a credit for voluntary spousal support payments made to [Gail] from July 31, 2009, the date of judicial demand for final support, to the date [Marc] ceased making voluntarily [s.i.c.] payments in January 2010." The language of the addendum is clear. Marc's credit is for voluntary payments made to Gail starting on the date of Gail's judicial demand. This is exactly the mandate of La.R.S. 9:321(D) that "[s]pousal support of any kind . . . provided by the debtor from the date of judicial demand to the date the support judgment is rendered . . . shall be credited to the debtor against the amount of the judgment." Therefore, there is no merit to Gail's assertion that the addendum was improper because it credited Marc for amounts he paid to Gail prior to her demand for final spousal support.

Accordingly, both assertions raised in this issue presented for review are without merit. Therefore, we find no error by the trial court in issuing the June 21, 2010 addendum.

**CONCLUSION:**

Gail presents four issues for review. We addressed each issue presented finding no error by the trial court in its judgment. All costs of this appeal are taxed to Leota Gail Wiley.

**AFFIRMED.**