NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 17-1180

JOHN M. PRICE, II

VERSUS

KELLIE VERCHER PRICE

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NO. C-87344 A
HONORABLE DEE A. HAWTHORNE, AD HOC JUDGE

\*\*\*\*\*\*\*\*\*\*

JOHN E. CONERY
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Billy Howard Ezell, and John E. Conery, Judges.

AFFIRMED.

**William Daniel Dyess**
**Dyess Law Firm, LLC**
**870 West Main Street**
**Many, Louisiana  71449**
**(318) 256-5667**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **John M. Price, II**

**Russell Louis Sylvester**
**Brittain and Sylvester**
**113 East Fifth Street**
**Natchitoches, Louisiana  71457**
**(318) 352-9588**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Kellie Vercher Price**

**CONERY, Judge.**

On appeal before us is a judgment addressing retroactive child support, determining fault and final spousal support, and partitioning the property belonging to the parties' former community. A three-day trial on all issues took place over the span of seventeen months. Final Judgment was rendered on May 18, 2017. The husband has appealed, assigning as errors the trial court's finding on fault, determination of final spousal support, and partition of the community. For the following reasons, we affirm the trial court's judgment.

## Procedural History:

John M. Price, II ("Milton") and Kellie Vercher Price ("Kellie") were married in 1988. On February 1, 2014, the parties began living separate and apart. Milton filed a petition for divorce alleging the parties had lived separate and apart since February 1, 2014, and had one minor child. Kellie answered Milton's petition and reconvened for interim and final spousal support, child support, use and occupancy of community property, and other ancillary issues. In her reconventional demand, Kellie alleged that she had been the victim of mental and physical abuse perpetrated by Milton during the marriage, entitling her to a divorce. The relief requested in Kellie's reconventional demand was fixed for hearing on December 18, 2014, and according to the minute entry, the case was continued without date.

On January 5, 2015, Kellie filed a petition for protection from abuse pursuant to La.R.S. 46:2131 or 2151, et seq. A temporary restraining order was issued against Milton on January 7, 2015. At the parties' January 12, 2015 hearing on the protective order, Kellie's petition for protection from abuse was dismissed, and by agreement of the parties, mutual injunctions against harassment pursuant to La.R.S. 9:372.1 were issued in the divorce proceedings.

On January 9, 2015, Milton filed an answer to Kellie's reconventional demand, alleging Kellie was not free from fault in the dissolution of the marriage and was not entitled to an award of final spousal support.

On February 11, 2015, Kellie filed a motion to set interim spousal and child support, and to allocate community assets pending partition pursuant to La.R.S. 9:374(E). Those matters were fixed for hearing on March 31, 2015. On March 4, 2015, Kellie filed a rule for contempt against Milton for violating a temporary restraining order prohibiting alienating, encumbering, or disposing of community property, and for terminating her AT&T service. Milton responded with a March 25, 2015 rule for contempt alleging Kellie had violated the parties' mutual injunction against harassment. The competing contempt rules were also fixed for hearing on March 31, 2015. At the March 31, 2015 hearing, upon agreement of the parties and after considering the evidence, the trial court granted the divorce.[1] The issue of fault was reserved.

Counsel for the parties then took up the issue of interim spousal support and contempt. At the conclusion of the evidence, the court granted Kellie exclusive use and occupancy of the parties' former family home and of a 2014 Mercedes. It granted Milton exclusive use of a 2014 truck.

The parties next appeared before the court on July 29, 2015. At issue was Kellie's claim for interim spousal support, child support, and for allocation of community assets, and the parties' competing contempt motions. Milton had not filed a pleading to set the issue of Kellie's fault before the court. Neither party moved for an order requiring the parties to file their sworn detailed descriptive lists

_____

[1] The judgment of divorce was signed on May 12, 2015.

and traversals in anticipation of a judicial partition of their former community property as required by La.R.S. 9:2801.

However, when they appeared in court on July 29, counsel informed the trial court they wanted to proceed with the issue of final spousal support. The court noted that final spousal support was "at issue, but not procedurally at this time, because we didn't set it for hearing . . . [but it had] no problem hearing it." The fault issue was then tried on joint motion of the parties and without objection. The trial court did not make any findings or issue any orders on that issue.

Over a year later, on August 3, 2016, the parties reconvened for the final day of trial. The court found that Kellie Price was free from legal fault, that there was domestic abuse of Kellie by Milton during the parties' marriage, and that she was entitled to interim and final spousal support. The court further determined that Kellie Price was entitled to child support arrears. At the close of evidence on August 3, 2016, the Court then asked counsel for additional information to help it determine the amount and duration of interim spousal support, amount of final spousal support, and to assist it in partitioning the parties' former community. It took these matters under advisement.

Counsel for the parties eventually submitted post-trial briefs and supplemental memorandum concerning the parties' income and expenses, assets and liabilities of the community property and the former community's alleged ownership of immovable property.

The court rendered written reasons for ruling on February 28, 2017, and signed a judgment that same day in which it determined child support arrearages, determined Kellie was free from fault and had been abused by Milton during the

3

marriage, awarded final spousal support from the date of judicial demand,[2] and partitioned the parties' former community property. That judgment failed to partition Milton's retirement accounts. The court amended its February 28, 2017 judgment on March 3, 2017, without a hearing. Because it was substantive, the trial court lacked authority to amend the judgment; substantive amendments require either consent of the parties or a hearing. *See* La.Civ.Code art. 1915. *See also Ast v. Ast*, 14-1282 (La.App. 3 Cir. 4/1/15), 162 So.3d 720, *writ denied*, 15-869 (La. 6/5/15), 171 So.3d 952 (final judgments can only be amended to correct things that neither add to nor take away from the judgment; trial courts do not have authority to substantively amend a judgment). Both parties filed motions for new trial, which were fixed for May 1, 2017.

The court granted Kellie's motion for new trial and rendered judgment that was identical to its February 28, 2017 judgment except for the inclusion of Milton's retirement accounts in its partition of the parties' former community property. The court denied Milton's motion for new trial.

The trial court's final judgment dated May 18, 2017, ultimately awarded Kellie $8,799.91 in child support arrearages and $2,700.00 per month in final periodic spousal support, retroactive to December 3, 2014, the date of judicial demand. The judgment then valued and partitioned some but not all of the former community property. It denied all of Milton's claims for reimbursement.

Milton appealed, assigning eight alleged errors committed by the trial court:

---

[2] Interim spousal support was never awarded. In its written reasons for ruling, the trial court acknowledged that interim support had not been awarded and then explained that it was making its award of final periodic spousal support retroactive to the date of judicial demand (December 3, 2014) pursuant to La.R.S. 9:321(b)(2), which provides: "[i]f an interim spousal support allowance award is not in effect on the date of the judgment awarding final spousal support, the judgment shall be retroactive to the date of judicial demand, except for good cause shown."

1. The Trial Court erred where expenses of $405 for payment of an adult child's car note and $150 for grooming was used by a former spouse in calculating expenses in fixing post-divorce support where the "support" encompasses food, shelter, clothing, reasonable and necessary transportation or automobile expenses, medical and drug expenses, utilities, household expenses, and the income tax liability caused by alimony and the jurisprudence does not allow support of major children to be considered as a living expense of one of the spouses nor does the term compass miscellaneous expenses or expenses for personal grooming.

2. The Trial Court erred in disallowing a monthly payroll deduction of $815.32 for payment of a community loan against husband's 401K reasoning that this payment would end when the parties settled the retirement account while Some degree of estimation is necessary, and support is unsusceptible of being reduced to mathematical computation, it may not be awarded for items which are purely speculative.

3. The trial court erred in taking into consideration, "after a lavish lifestyle together" in fixing permanent spousal support and allowing expenses for two car notes, one for a Mercedez Benz and one for an adult child where post-divorce support is awarded to a former spouse in need and is limited to an amount sufficient for maintenance, as opposed to continuing an accustomed style of living.

4. The trial court erred in disallowing all of Appellant's reimbursement claims by applying C.C. Code Art 1846's special statutory method for proof of contracts in a claim for reimbursement between spouses where the Court relied on *Tarver v. Tarver* . . . and *Bridge v. Bridges*. . . and both cases resolved a loan from parents rather than reimbursement between spouses and when *Arterburn v. Arterburn* teaches that LSA C.C. art. 2365 establishes the burden of proof in claim for reimbursement and testimony is always acceptable method of proof absent a special statute to contrary.

5. The trial court erred in finding wife free from fault where husband alleged that wife's excessive spending was a cause of the break of the marriage and the Trial Court made a credibility determination reasoning that wife and her witness testimony was more consistent where there was clear inconsistency between the testimony of the wife and her friendly witness regarding spouse's argument over money.

6. Trial court erred in in finding the wife free from fault where evidence showed that she frequently went to bars, drank heavily, and danced with other men while husband was at work and was therefore intemperate.

7. Trial court erred in not considering testimony that wife, after insisting the family live a great distance from husband's work, often yelled at husband when he arose early to go to work ruling that this act of cruelty by wife was not described in husband's answers to interrogatories.

8.  The Trial Court erred in not applying the provisions of La.C.C. Article 112 and finding Kellie Price was in necessitous circumstances, where her testimony showed that she had skills and was in fact working and could earn a livelihood.

Kellie Price did not answer the appeal. Neither of the parties has appealed the granting of the judgment of divorce or the amount of past-due child support.

## Standard of Review

We review the trial court's findings of fault for spousal support purposes, determination on whether to award final spousal support, and partition of parties' former community property for abuse of discretion. *See McKenna v. McKenna*, 09-295, p. 5 (La.App. 5 Cir. 10/27/09), 27 So.3d 923, 926, ("[i]n the area of domestic relations, much discretion must be vested in the trial judge and particularly in evaluating the weight of the evidence which is to be resolved primarily on the basis of the credibility of witnesses"). *See also Arterburn v. Arterburn*, 15-22, p. 4 (La.App. 3 Cir. 10/7/15), 176 So.3d 1163, 1167, ("[t]he trial court is vested with great discretion in effecting a fair partition of community property").

We review the amount of final spousal support awarded by employing a three-step process:

> The first step of the process requires us to "determine whether the trial judge correctly applied the proper legal standard or standards." Id. at 266 (quoting Davy v. Davy, 469 So.2d 481, 482 (La.App. 3 Cir.1985)). Because this involves issues of law, we consider only whether the trial court applied the correct standards with no deference being given the trial court's determination. Id. Next, we review the trial court's findings of fact. Id. Findings of fact will not be reversed unless they are found to be manifestly erroneous in light of the entire record. Id. Lastly, we consider the propriety of the final spousal support award. "If it is within legal limits and based on facts supported by the record, we will not alter the amount of the award in the absence of an abuse of the trial judge's great discretion to set such awards." Id. at 266–67.

6

*Miller v. Miller*, 13-1043 (La.App. 3 Cir. 4/2/14), 161 So.3d 690, 697, *writ denied*, 14-1607 (La. 10/31/14), 152 So.3d 154.

**Law and Discussion**

Milton's assignments of error encompass two topics of discussion: spousal support and community property partition. Milton's second and fourth assignment of error concern partition of the former community property and his first, third, and fifth through eighth assignments of error concern final spousal support and the requisite underlying fault determination. We will first address the spousal support issue and then address the community property partition issues.

Spousal Support:

There are two types of spousal support, interim and final. La.Civ.Code art. 111. Interim support runs retroactively from the date of judicial demand and terminates when a judgment of divorce is rendered unless a claim for final support is pending before the court at that time. La.Civ.Code arts. 113(A) and (B). If a claim for final support is pending before the court when the judgment of divorce is signed, the interim support award terminates one hundred eighty days from the date of divorce or on the date the court determines whether to award final spousal support. La.Civ.Code art. 113. Courts may award interim support to a party "based on the needs of that party, the ability of the other party to pay, any interim allowance or final child support obligation, and the standard of living of the parties during the marriage." La.Civ.Code art. 113(A).

Final spousal support, however, can only be awarded to a party "who is in need of support and who is free from fault prior to the filing of a proceeding to terminate the marriage." La.Civ.Code art. 111. "Petty quarrels between [spouses] do not rise to the level of legal fault. . . . Legal fault consists of serious misconduct

7

which is a cause of the marriage's dissolution." *McKenna*, 27 So.3d at 925 (citations omitted). In fault-based divorce proceedings, the word "fault" "contemplates 'conduct or substantial acts of commission or omission by [either party] violative of [his or her] marital duties and responsibilities.'" *Id.* (quoting *Pearce v. Pearce*, 348 So.2d 75, 77 (La.1977)). The misconduct "must not only be of a serious nature but must also be an independent contributory or proximate cause of the separation." *Id.*

"Once freedom from fault is established, the basic tests for the amount of spousal support are the needs of that spouse and the ability of the other spouse to pay." *Faucheaux v. Faucheaux*, 11-939, p. 3 (La.App. 5 Cir. 3/27/12), 91 So.3d 1119, 1122. "Need" is defined as the necessary expenses to procure basic necessities of life. *See McMullen v. McMullen*, 11-220 (La.App. 5 Cir. 12/13/11), 82 So.3d 418. Basic necessities encompass "food, shelter, clothing, transportation, medical and drug expenses, utilities, household necessities, and income tax liability generated by spousal support payments." *Faucheaux*, 91 So.3d at 1122. A claimant spouse's needs must be considered in light of the payor spouse's means or ability to pay. A determination of means should include income as well as any non-monetary resource providing for some of the payor spouse's needs and that spouse's entire financial condition should be considered. *See Baggett v. Baggett*, 96-453 (La.App. 3 Cir. 4/23/97), 693 So.2d 264.

Generally, when a court has found the claimant spouse free from fault and in need of support and the other spouse has the means to provide support, the final spousal support award is capped at one-third of the payor spouse's net income. La.Civ.Code art. 112(D). When there has been a finding of domestic abuse during

the marriage, that cap does not apply.[3]  *Id.*  However, final spousal support is "limited to an amount sufficient for maintenance as opposed to a continuation of an accustomed style of living" even when domestic abuse has been found.  *Faucheaux*, 91 So.3d at 1119.

In determining the amount and duration of the final support award, courts are required to consider all relevant factors including the factors set forth in La.Civ.Code art. 112:

> (1) The income and means of the parties, including the liquidity of such means.
> (2) The financial obligations of the parties, including any interim allowance or final child support obligation.
> (3) The earning capacity of the parties.
> (4) The effect of custody of children upon a party's earning capacity.
> (5) The time necessary for the claimant to acquire appropriate education, training, or employment.
> (6) The health and age of the parties.
> (7) The duration of the marriage.
> (8) The tax consequences to either or both parties.
> (9) The existence, effect, and duration of any act of domestic abuse committed by the other spouse upon the claimant, regardless of whether the other spouse was prosecuted for the act of domestic violence.

In this case, the trial court found Kellie was free from fault and that domestic violence was perpetrated against Kellie by Milton during their marriage.  It determined that Kellie was more credible and consistent than Milton, and that her testimony was supported by other evidence and testimony of other witnesses.  The trial court found that Milton was nonchalant about the physical abuse that occurred during the parties' marriage and that he "seemed to lack seriousness."  In its written reasons for ruling, it noted that "Milton in fact admitted physical[ly] abus[ing Kellie]"

---

[3] We note that the $2700.00 sum awarded is thirty-five percent of Milton's net income, only two-percent higher than the standard one-third cap.  Because the trial court found Milton had abused Kellie, the cap did not apply to this case and the trial court could have awarded Kellie the entire amount it found she needed each month ($2,865.72) instead of the lesser $2,700.00.

9

and "[t]he Court [finds] that Milton was the source of physical abuse, to which Kellie responded in self-defense." Although Milton asserts that Kellie's spending caused the dissolution of the parties' marriage, the trial court found "that the manner of spending in [the] household was mutual" and "that Milton seemed to have either participated in or initiated many or most of the decisions concerning spending." We find no abuse of the trial court's discretion in these findings.

In its written reasons for ruling, the trial court noted that Kellie had not graduated from high school and that while the parties and their children moved around the country as Milton climbed the corporate ladder, Kellie had not worked outside of the home except for briefly at the beginning of their marriage. It also found that Milton stopped paying support to Kellie by June 23, 2015. For these reasons, it found Kellie was in need of final spousal support.

In its reasons for ruling, the trial court clearly considered the factors set forth in La.Civ.Code art. 112. The trial court determined that Kellie had no ability to acquire education, training, or employment that would support her basic needs. It determined Kellie's actual income was less than minimum wage, but for purposes of support, imputed her with a net monthly income of $1,002.28. In determining Milton's net monthly income, the trial court added Milton's payroll and bonus awards and divided those by twelve. It then subtracted taxes and voluntary pre-tax payroll deductions and came to a monthly income of $7,668.03. We have reviewed the trial court's findings of facts and find no abuse of discretion.

We have also considered the propriety of the award of two-thousand, seven-hundred dollars each month to Kellie. As evidenced by its written reasons for ruling, the trial court carefully considered the testimony of the two parties and their witnesses. It considered both of their income and expense affidavits. It considered

10

the expenses listed on Kellie's income and expense affidavit and delineated those it found to be reasonable and necessary.

Included in the trial court's list of Kellie's necessary monthly expenses was a former community debt to Campus Federal Credit Union. Milton argues that because this debt was used to purchase the parties' adult daughter's vehicle, it should not have been included. We disagree. Louisiana law is clear that the party assessed with a community obligation is required to extinguish that debt. La.Civ.Code art. 2365. In its partition of the parties' former community, the trial court assessed the Campus Federal liability to Kellie, thus obligating her to pay it. The financial obligations of each spouse is one of the factors to be considered by the court in determining the sum to award as final spousal support. Therefore, the trial court 's consideration and inclusion of this obligation was not erroneous.

The trial court determined that Kellie's monthly needs amounted to $3,868.00. Subtracting her imputed income from that amount, the court determined that Kellie's net monthly needs were $2,865.72 each month.

Because we find no error in the trial court's determination of Kellie's needs or earning capacity, we turn to Milton's income and expense affidavit in comparison to help determine whether the award is reasonable. The trial court determined Milton's net income was $7,668.03 and his monthly expenses were $3,483.50, leaving him with a disposable income of $4,184.53 each month. Included in the monthly expenses the trial court considered and included for Milton was a one hundred dollar golf expense and a one hundred fifty dollar gift expense. The trial court found that Milton had the ability to pay $2,700.00 in spousal support to Kellie each month.

For these reasons, we find no error with the trial court's award of final spousal support. Milton's third, fifth, sixth, seventh, and eighth assignments of error lack merit. *See Miller*, 161 So.3d 690.

Community Property:

Milton assigns as error the trial court's failure to include in its partition of the parties' former community property a community liability stemming from two loans the parties took out against Milton's retirement accounts. He also alleges the trial court erred in denying his reimbursement claims.

"The legal regime of community property is terminated by the . . . judgment of divorce that terminates the community." La.Civ.Code art. 2356. Once the legal regime terminates, however, the obligations and assets of the community remain. To divide, or partition, the former community property, courts must follow the procedure set forth in La.R.S. 9:2801 must be followed.

Louisiana Revised Statutes 9:2801 sets forth the procedure to be followed in judicial partitions of community property. The record clearly shows that the procedures set forth in La.R.S. 9:2801 were not followed. Neither party sought a court order mandating the filing of the parties' sworn detailed descriptive lists and traversals as required by La.R.S. 9:2801(A)(1)(a) and (2). Additionally, the trial court failed to partition all of the parties' former community property in accordance with La.R.S. 9:2801(A)(4). However, the procedural deficiencies are not before us on appeal.

There is no assertion that the trial court's partition of the parties' former community property was inaccurate other than Milton's assertion that the trial court failed to include two 401K loan liabilities in its partition of the community. This assertion is inaccurate.

12

Both parties acknowledged the existence of two retirement accounts (a 401K account and a pension account) and two loans taken out against the 401K. They agreed that the retirement accounts would be divided equally between them pursuant to the Sims formula.[4] In its reasons for ruling, the trial court stated: "[t]he two loans that have been made by the parties on the 401K Account will be paid and satisfied prior to the account being distributed to the parties." The 401K loan liability was allocated equally between the parties, and the community portions of Milton's retirement accounts, to be determined by the Sims formula, were also allocated equally between the parties.

In allocating assets and liabilities, the trial court is assigned to "consider the nature and source of the asset or liability[ and] the economic condition of each spouse[.]" La.R.S. 9:2801(4)(c). The spouse to whom a liability is allocated is responsible for paying that debt. *Id*. The trial court repeatedly noted the parties' difficult financial positions, telling them "[t]here's only so much money . . . there's not a whole lot left after you pay the obligations that you all have both incurred." It is clear to us that the trial court took the parties' financial position into consideration when it bifurcated the retirement account assets and liabilities and offset payment of the 401K loans against the retirement account distribution. We find no error with the trial court's determination as to this assignment of error.

Milton also alleges that the trial court erred in denying his claims for reimbursement. Louisiana Civil Code article 2365 creates a reimbursement claim in favor of a spouse who pays a community obligation with his or her separate property for one-half of the sum paid. The spouse seeking reimbursement has the burden of

---

[4] *Sims v. Sims*, 358 So.2d 919 (La.1978).

13

showing that separate funds existed, and those separate funds were used to satisfy a community obligation. *Williams v. Williams*, 07-541 (La.App. 3 Cir. 10/31/07), 968 So.2d 1234. The moving party must show by a preponderance of the evidence the nature of the indebtedness and that the community obligation was incurred as an ordinary and customary expense of the marriage. *Harriss v. Harriss*, 16-9 (La.App. 3 Cir. 10/12/16), 204 So.3d 209.

Milton claimed he was entitled to reimbursement for payment of community obligations post-termination. Kellie disputed each of Milton's reimbursement claims. In its reasons for ruling, the trial court noted that, "Milton alleged he had bank statements and other evidence to support his claim, however presented nothing to substantiate his reimbursement claim. . . . During prior hearings, claims were made that he was providing support for his family, but he was never able to say 'what?' and 'how much?' No proof was ever entered into evidence to substantiate his claims."

Our review of the record confirms the trial court's finding. There is no evidence of community obligations paid by Milton. The record contains Milton's two page reimbursement claim, his income and expense affidavit, and a single State Farm bill dated March 2, 2015 that indicated insurance was being paid on a boat, a 2014 truck, and a 2014 Mercedes. Accordingly, we find no error with the trial court's determination that Milton did not meet his burden of proving he was entitled to reimbursement.

In his brief to this court, Milton asserts that the trial court's judgment ordering him to pay to Kellie the sum of $6,476.68 for one-half of sums paid on a Hickory Ridge lot is erroneous. We disagree. The Hickory Ridge lot is a piece of immovable property purchased in the name of Milton's father but paid for by the parties. The

trial court determined, based on the consistent testimony of Kellie and Milton's original testimony, that the parties' purchased the lot when they moved back to the Natchitoches area and intended to build a home on the property. Because the parties had a judgment against them in a different parish that would have precluded their buying the land, the Hickory Ridge lot was purchased in Mr. Price's name.

In its reasons for ruling, the trial court determined that the evidence adduced at trial by Kellie clearly showed that the Hickory Ridge lot was in Mr. Price's name, that Mr. Price loaned the parties $2,500 for a down payment on the lot, that Kellie re-paid the loan in full, that Kellie paid the monthly notes on the property, that the parties made significant improvements on the property, paid the taxes on the property, and upon dissolution of their relationship, signed a listing agreement with Collins and Stamey to sell the property.

The trial court also explained in its written reasons for ruling that Milton's "story and position" on the Hickory Ridge lot, particularly whether it was community property, "continued to change, as well as his argument. He has not offered any supporting evidence concerning the Hickory Ridge lot." The trial court discussed the testimony of Milton's mother, stating, "[s]he did not appear to be very certain about anything[,]" but she did testify that her husband had died, a succession had "been done" and that "she now owns the property – because her husband died, and because **her children donated their interest in the property to her** as well." (Emphasis in original). The trial court then noted in its reasons for ruling that it was "quite in the dark [about the property], because no evidence was submitted in regard to the property. None of the succession papers were entered into evidence. A copy of the note on the lot was not entered into evidence."

The trial court then concluded that

> Milton, who was in a unique position to do so, failed to seek to protect Kellie's and his interests as it relates to this property. Even worse, according to his mother, he donated his interest in the property to his mother. It is unclear what the interest may have been, since nothing has been presented to the Court.
>
> The Court finds that Milton's position in this matter is untenable. It was clear to the Court that Milton believed he and Kellie was [sic] buying this property to build their house on it. It is completely disingenuous to now say that this property was always intended for his father.
>
> Unfortunately, ownership of this property has not been properly brought before the Court. In fact, the Court is not sure whether actual ownership is really the issue. Both parties agree that the record title is in the name of [Milton's] father. Neither party has sought to join the Succession or its heirs/legatees as parties to this suit to address the issue or raise any claims.

The trial court noted that "Milton has always proposed that he reimburse Kellie one-half the amount they had paid thus far for the lot. $2,500 was the down payment on the lot, and according to Milton, the payments on the lot were $10,453.36. One-half of that amount is $6,476.68. Thus the Court orders that Kellie be credited or reimbursed by Milton in that amount."

Milton asserts that the trial court could have come to one of two conclusions, neither of which were supported by evidence sufficient to order the offset payment by Milton to Kellie for the property. First, Milton asserts the trial court may have concluded that the parties actually purchased the lot. However, "[t]here was no evidence on how much is yet due on the lot[,]" and, according to Milton, "the proper result would take into consideration the value of the property minus the mortgage and divide both debt and property. There was no effort to do this and [the] amount ordered to be reimbursed was arbitrary under this scenario."

Alternatively, Milton argues, the trial court may have concluded that the payments made from community property were loans to Milton's parents. However, he asserts that although this finding would result in the equalizing payment ordered

16

by the trial court, "this would require proof that [his] parents agreed to repay the loan. There was no such proof."

We disagree with Milton's assertions and find no error with the trial court's conclusions and findings. Kellie produced evidence at trial in the form of testimony and exhibits to support the parties' intent, the loan made by Mr. Price to the parties for the down payment on the lot, repayment of the down payment by Kellie, payment of the monthly notes and taxes, and the parties intent to list the property for sale. Milton did not introduce any evidence to controvert Kellie's. The trial court is vested with the authority to determine the community assets and liabilities. *See* La.R.S. 9:2801(A)(2). Although it did not classify the lot as a community asset, the trial court clearly determined that the down payment reimbursement and monthly note were a community liability paid by Kellie. We find no error in its determination that Milton owed Kellie one-half of the amounts she paid. We also find no error in the trial court's failure to classify the immovable property itself as a community asset or to include any future monthly notes for the property as a community liability, considering Mrs. Price's testimony that she was the sole owner of the lot in question.

## CONCLUSION

For the foregoing reasons, the trial court's May 18, 2017 judgment is affirmed in its entirety. All costs of this appeal are cast against John Milton Price, II.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules—Courts of Appeal. Rule 2-16.3.

17